1  KRISTIN S. ESCALANTE, Cal. Bar No. 169635
   Email: escalantek@sec.gov
2  DOUGLAS M. MILLER, Cal. Bar No. 240398
   Email: millerdou@sec.gov
3  DONALD W. SEARLES, Cal Bar. No. 135705
   Email: searlesd@sec.gov
4  Attorneys for Plaintiff Securities and Exchange Commission

5  Mark R. Zehner, Deputy Chief
   Municipal Securities and Public Pensions Unit
6  Philadelphia Regional Office
   One Penn Center
7  1617 JFK Boulevard, Suite 520
   Philadelphia, Pennsylvania 19103
8
   Michele Wein Layne, Regional Director
9  John W. Berry, Associate Regional Director
   Amy J. Longo, Regional Trial Counsel
10 444 S. Flower Street, Suite 900
   Los Angeles, California 90071
11 Telephone: (323) 965-3998
   Facsimile: (213) 443-1904

12

13                 **UNITED STATES DISTRICT COURT**

14                 **CENTRAL DISTRICT OF CALIFORNIA**

15                      **WESTERN DIVISION**

16  SECURITIES AND EXCHANGE              Case No. 5:13-cv-00776-JAK-KK
    COMMISSION,
17                                       **PARTIES' AMENDED DISPUTED**
             Plaintiff,                  **JURY INSTRUCTIONS**
18
          vs.                            Pretrial Conference: January 8, 2018
19
    CITY OF VICTORVILLE, et al.,         Jury Trial Date: January 23, 2018
20
             Defendants,
21
          and
22
    KND HOLDINGS, INC.,
23
             Relief Defendant.
24

25

26

27

28

# TABLE OF CONTENTS

SEC PROPOSED JURY INSTRUCTION:
STATUTORY PURPOSE OF THE SECURITIES LAWS ................................. 2

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
STATUTORY PURPOSE OF THE SECURITIES LAWS ................................. 3

SEC PROPOSED JURY INSTRUCTION:
BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE ................ 5

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE ................ 6

SEC PROPOSED JURY INSTRUCTION:
STATEMENT OF A PARTY OPPONENT ......................................... 8

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
STATEMENT OF A PARTY OPPONENT ......................................... 8

SEC PROPOSED JURY INSTRUCTION:
OTHER ACTS OF THE DEFENDANT ............................................ 10

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
OTHER ACTS OF THE DEFENDANT ............................................ 11

SEC PROPOSED JURY INSTRUCTION:
ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED ...................... 12

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED ...................... 12

SEC PROPOSED JURY INSTRUCTION:
THE SEC'S CLAIMS ........................................................... 13

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
THE SEC'S CLAIMS ........................................................... 15

SEC PROPOSED JURY INSTRUCTION:
SECTION 17(a) – CLAIM ONE – AGAINST THE AUTHORITY ................. 18

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
SECTION 17(a) – CLAIM ONE – AGAINST THE AUTHORITY ................. 20

SEC PROPOSED JURY INSTRUCTION:
MISREPRESENTATIONS AND OMISSIONS ..................................... 23

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
MISREPRESENTATIONS AND OMISSIONS ..................................... 24

DEFENDANTS' PROPOSED JURY INSTRUCTION:
SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
AUTHORITY – MISREPRESENTATION ........................................ 25

i

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
AUTHORITY – MISREPRESENTATION ........................................ 27

SEC PROPOSED JURY INSTRUCTION:
MATERIALITY ................................................................ 32

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
MATERIALITY ................................................................ 34

SEC PROPOSED JURY INSTRUCTION:
KNOWINGLY, RECKLESSLY, NEGLIGENCE ............................. 36

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
KNOWINGLY, RECKLESSLY, NEGLIGENCE ............................. 38

DEFENDANTS' PROPOSED JURY INSTRUCTION:
SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
AUTHORITY --SCIENTER ................................................. 41

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
AUTHORITY --SCIENTER ................................................. 43

DEFENDANTS' PROPOSED JURY INSTRUCTION:
SECTION 17(a)(2) CLAIM AGAINST THE AUTHORITY –
NEGLIGENCE ................................................................ 46

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
SECTION 17(a)(2) CLAIM AGAINST THE AUTHORITY –
NEGLIGENCE ................................................................ 47

SEC PROPOSED JURY INSTRUCTION:
LIABILITY OF CORPORATIONS AND OTHER ENTITIES ....................... 51

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
LIABILITY OF CORPORATIONS AND OTHER ENTITIES ....................... 53

SEC PROPOSED JURY INSTRUCTION:
RELIANCE ON PROFESSIONALS.................................................. 55

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
RELIANCE ON PROFESSIONALS.................................................. 57

SEC PROPOSED JURY INSTRUCTION:
ISSUER'S DUTIES AND STANDARD OF CARE ........................................ 59

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
ISSUER'S DUTIES AND STANDARD OF CARE ........................................ 59

SEC PROPOSED JURY INSTRUCTION:
UNDERWRITER'S DUTIES AND STANDARD OF CARE ........................... 61

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
UNDERWRITER'S DUTIES AND STANDARD OF CARE ........................... 63

ii

SEC PROPOSED JURY INSTRUCTION:
    CLAIM TWO: SECTION 10(b) AND SEC RULE 10B-5(b) – AGAINST
    THE AIRPORT AUTHORITY ........................................................................ 64

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
    CLAIM TWO: SECTION 10(b) AND SEC RULE 10B-5(b) – AGAINST
    THE AIRPORT AUTHORITY ........................................................................ 66

DEFENDANTS' PROPOSED JURY INSTRUCTION:
    SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
    AUTHORITY – ELEMENTS ......................................................................... 69

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
    SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
    AUTHORITY – ELEMENTS ......................................................................... 71

DEFENDANTS' PROPOSED JURY INSTRUCTION:
    SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
    AUTHORITY – MAKER OF A STATEMENT ............................................. 75

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
    SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
    AUTHORITY – MAKER OF A STATEMENT ............................................. 76

DEFENDANTS' PROPOSED JURY INSTRUCTION:
    SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
    AUTHORITY – FORWARD-LOOKING STATEMENTS .............................. 77

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
    SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE
    AUTHORITY – FORWARD-LOOKING STATEMENTS .............................. 78

SEC PROPOSED JURY INSTRUCTION:
    CLAIM THREE: AIDING AND ABETTING – AGAINST THE CITY OF
    VICTORVILLE, KND, MR. METZLER, MR. KINSELL, AND MS.
    WILLIAMS ................................................................................................... 82

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
    CLAIM THREE: AIDING AND ABETTING – AGAINST THE CITY OF
    VICTORVILLE, KND, MR. METZLER, MR. KINSELL, AND MS.
    WILLIAMS ................................................................................................... 85

DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING VIOLATIONS OF SECTION 10(b) OF THE
    SECURITIES EXCHANGE ACT AND SEC RULE 10b-5 ............................ 90

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING VIOLATIONS OF SECTION 10(b) OF THE
    SECURITIES EXCHANGE ACT AND SEC RULE 10b-5 ............................ 92

DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING CLAIM — PRIMARY VIOLATION ................... 95

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING CLAIM — PRIMARY VIOLATION ................... 96

iii

DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING CLAIM — ACTUAL KNOWLEDGE..................97

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING CLAIM — ACTUAL KNOWLEDGE..................98

DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING CLAIM – SUBSTANTIAL ASSISTANCE........100

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING CLAIM – SUBSTANTIAL ASSISTANCE........101

DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING CLAIM – CITY OF VICTORVILLE..................103

SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION:
    AIDING AND ABETTING CLAIM – CITY OF VICTORVILLE..................104

SEC PROPOSED JURY INSTRUCTION:
    RELIANCE/LOSS NOT REQUIRED..............................................................105

DEFENDANT'S OBJECTIONS TO SEC PROPOSED JURY INSTRUCTION:
    RELIANCE/LOSS NOT REQUIRED..............................................................105

iv

Plaintiff Securities and Exchange Commission (the "SEC") and defendants Southern California Logistics Airport Authority, City of Victorville, Keith Metzler (collectively the "Municipal Defendants"), Kinsell, Newcomb & Dedios, KND Affiliates, LLC, Jeffery Kinsell, Janees Williams, and KND Holdings, Inc. (collectively the "KND Defendants"), respectfully submit this set of disputed proposed jury instructions, which includes a "clean" copy of the party's proposed jury instruction with supporting authority, followed by the opposing party's redline and statement of objections.  The document was not filed with the court on December 11, 2017, due to technical difficulties experienced by the SEC in preparing and formatting the document.

1

1    **<u>SEC PROPOSED INSTRUCTION</u>**

2    *STATUTORY PURPOSE OF THE SECURITIES LAWS*

3

4    This is a civil action, brought by the Securities and Exchange Commission,

5    which you will hear called the "SEC."  The SEC is an independent government

6    agency that is authorized by federal law to investigate and prosecute violations of the

7    federal securities laws.

8    The two principal federal statutes at issue in this case are the Securities Act of

9    1933, which I will refer to as the "Securities Act," and the Securities Exchange Act of

10   1934, which I will refer to as the "Exchange Act."  Following the stock market crash

11   in 1929, the United States Congress passed these laws to protect the integrity of the

12   financial markets.  The principle underlying these laws is full disclosure of material

13   matters about securities that are bought and sold in the public marketplace.

14   Congress passed the Securities and Exchange Acts to protect investors when

15   they are offered or sold securities, like stocks or bonds.  The law requires full

16   disclosure of all the important facts about securities that are bought and sold in the

17   public marketplace.  When it enacted these laws, Congress recognized that the

18   purchase of stock is different from the purchase of a vegetable bought in the grocery

19   store and that the average investor is not in a position to investigate the worth, quality

20   and value of securities.  Rather, an investor purchasing a security is entitled to rely on

21   the full disclosure of the issuer of the securities, in determining whether to purchase

22   the security and on what terms.

23

24

25   *Authority*:  <u>Manual of Model Civil Jury Instructions for the Ninth Circuit</u>, 2007

26   Edition, Section 18.0 ("Congress has enacted securities laws designed to protect the

27   integrity of financial markets."); 4 L. Sand, et al., <u>Modern Federal Jury Instructions</u>,

28   2010 Ed., Section 82.-2 ("Statutory Purpose" - modified); *SEC v. W.J. Howey Co.*,

1  328 U.S. 293, 299 (1946) (statutory purpose of "full and fair disclosure"); *United*

2  *States v. Bartlett*, 449 F.2d 700, 704 (8th Cir. 1971) ("an investor purchasing a

3  security must rely on the representations of the company"); *United States v. Parrott*,

4  425 F.2d 972, 977 (2d Cir. 1970) ("the charge as to the purpose of the statute was

5  useful to give the statute some coherence in the eyes of the jury which may not have

6  been fully informed as to the meaning of the securities laws"); *United States v*

7  *Charnay*, 537 F.2d 341, 347-48 (9th Cir. 1976) (discussing statutory purpose of

8  securities laws); *SEC v. Jasper*, No. 5:07-cv-06122 (N.D. Cal.) Dkt. No. 241, p. 5

9  (Closing Instructions) ("Following the stock market crash in 1929, the United States

10  Congress passed laws to protect the integrity of the financial markets.  Among the

11  laws passed were the Securities Act of 1933 and the Securities Exchange Act of

12  1934.  The principle underlying these laws is full disclosure of material matters about

13  securities that are bought and sold in the public marketplace."); *SEC v. Zandford*,

14  535 U.S. 813, 821-22 (2002) ("preserving the integrity of the securities markets

15  was one of the purposes animating" the Exchange Act, as was the intent "to bar

16  deceptive devices and contrivances in the purchase or sale of securities whether

17  conducted in the organized markets or face to face") (quotation and citation omitted);

18  *see also SEC v. Life Partners, Inc.*, 87 F.3d 536, 555 (D.C. Cir. 1996) ("the SEC . . .

19  bears primary responsibility for administering the securities laws"); *Harden v.*

20  *Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1401 (7th Cir. 1995) (the SEC is the

21  "agency responsible for enforcing the securities laws"); 15 U.S.C. § 78u (granting

22  SEC power to investigate and prosecute violations of securities laws).

23

24

25  **Defendants' Position:**

26      The Municipal Defendants object to this instruction for the following reasons:

27      First, the statutory purpose of the securities laws is not relevant to any fact of

28  consequence in this action.  There is no reason to instruct the jury about the 1929

3

1  stock market crash or whether Congress recognized that purchasing securities is

2  similar to or different from purchasing vegetables.  This is unnecessary and

3  confusing.[1]

4        Second, the proposed instruction misstates the law.  The proposed instruction

5  makes multiple references to a supposed requirement of "full disclosure" of all

6  important facts about securities.  Neither Section 10(b) of the Securities Exchange

7  Act nor Section 17 of the Securities Act imposes any such duty.  Rather, liability may

8  be found on the basis of omissions only when there is "a failure to disclose a material

9  fact that had to be disclosed to prevent other statements that were made from being

10  misleading." *See* Ninth Cir. Model Jury Instruction 18.1 (2017); 17 CRF 240.10b-5.

11        Third, the proposed instruction is unnecessary and unduly prejudicial because

12  the SEC has not asserted an omission-based theory of liability in this case.  The SEC

13  has alleged throughout this litigation that the Authority made *misstatements* regarding

14  projected tax increment revenues and projected annual debt service ratios in the May

15  2008 Official Statement.  The SEC cannot propose to instruct the jury and potentially

16  allow a finding of liability based on an entirely new legal theory.[2]

17

18

19

20

21  _____

22  [1] Moreover, the instruction misrepresents Congress' intent in passing the securities laws.  Contrary to the SEC's statement that Congress passed the securities laws "to protect investors," the primary purpose of the securities laws, as recognized in the very authority the SEC itself cites and quotes, was "to protect the integrity of financial markets."  *Manual of Model Civil Jury Instructions for the Ninth Circuit,* 2007 Ed. No. 18.0.

23

24  [2] Should the Court deem it appropriate to describe the SEC or the securities laws, the Municipal Defendants propose that the Court adopt the language and approach used in the current Ninth Circuit Model Jury Instruction 18.1, and add the following language to the beginning of the SEC's proposed instruction on "The SEC's Claims": "Congress has enacted securities laws designed to protect the integrity of financial markets.  The buying and selling of securities is controlled by the Securities Laws. Many of these laws are administered by the United States Securities and Exchange Commission (SEC)."

25

26

27

28

4

**SEC PROPOSED INSTRUCTION**

***BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE***

I mentioned to you this is a civil case.  It is not a criminal case.  The SEC bears the burden of proving its claims against the Defendants by a preponderance of the evidence.  This means the SEC has to prove to you, in light of all the evidence, that what it claims is more likely so than not so.

To say it differently, if you were to put the evidence favorable to the SEC and the evidence favorable to the Defendants on opposite sides of the scale, the SEC would have to make the scale tip somewhat on its side.  If the SEC fails to meet this burden, the verdict must be for the Defendant.  If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard of proof and it applies only to criminal cases.  It does not apply to civil cases such as this.  So you should put it out of your mind.

***Authority***:  Manual of Model Civil Jury Instructions for the Ninth Circuit, No. 1.6 (2017 ed.) (modified); Third Circuit Model Jury Instructions, No. 1.10.

1    **DEFENDANTS' OBJECTIONS TO SEC PROPOSED INSTRUCTION**

2    ***BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE***

3

4    When a party has the burden of proving any claim by a preponderance of the

5    evidence, it means you must be persuaded by the evidence that the claim is more

6    probably true than not true.  You should base your decision on all of the evidence,

7    regardless of which party presented it.

8    ~~I mentioned to you this is a civil case.  It is not a criminal case.  The SEC bears~~

9    ~~the burden of proving its claims against the Defendants by a preponderance of the~~

10   ~~evidence.  This means the SEC has to prove to you, in light of all the evidence, that~~

11   ~~what it claims is more likely so than not so.~~

12   ~~To say it differently, if you were to put the evidence favorable to the SEC and~~

13   ~~the evidence favorable to the Defendants on opposite sides of the scale, the SEC~~

14   ~~would have to make the scale tip somewhat on its side.  If the SEC fails to meet this~~

15   ~~burden, the verdict must be for the Defendant.  If you find after considering all the~~

16   ~~evidence that a claim or fact is more likely so than not so, then the claim or fact has~~

17   ~~been proved by a preponderance of the evidence.~~

18   ~~In determining whether any fact has been proved by a preponderance of the~~

19   ~~evidence in the case, you may, unless otherwise instructed, consider the testimony of~~

20   ~~all witnesses, regardless of who may have called them, and all exhibits received into~~

21   ~~evidence, regardless of who may have produced them.~~

22   ~~You may have heard of the term "proof beyond a reasonable doubt."  That is a~~

23   ~~stricter standard of proof and it applies only to criminal cases.  It does not apply to~~

24   ~~civil cases such as this.  So you should put it out of your mind.~~

25

26

27

28

6

**Defendants' Position:**

The Municipal Defendants object to this instruction on the grounds that it is unnecessary, confusing, and misstates the law.  The Municipal Defendants' proposed jury instruction, in contrast, which is reflected in redline above, is an accurate statement of the law and identical to the current Ninth Circuit Model Instruction No. 1.6.

The SEC's proposed instruction will simply confuse the jury by introducing concepts such as "reasonable doubt" that are not at issue in this case.  This instruction should describe what "preponderance of the evidence" means (as the Ninth Circuit Model Instruction does)—and not what the term does not mean.  The SEC's proposed instruction also improperly states that the jury should indiscriminately weigh the evidence supporting the Defendants collectively against the evidence supporting the SEC, which erroneously ignores the fact that there are different claims against different defendants with different elements of proof.

1    **SEC PROPOSED INSTRUCTION**

2    *STATEMENT OF A PARTY OPPONENT*

3

4        The evidence you have been presented with may have included various

5    statements that a Defendant made, including sworn statements the Defendant made

6    during the SEC's investigation of this matter before it filed this lawsuit and sworn

7    statements the Defendant made during depositions in this litigation.  You should

8    consider such prior testimony that was read to you in the same way as you would

9    consider any other testimony in this case.

10       When the plaintiff offers such a statement as evidence against the Defendant

11   who made it, the statement is called an admission.  You may consider the

12   Defendant's admissions as affirmative evidence against the Defendant who made the

13   admission.  Where the Defendant is an entity, you may consider statements that were

14   made by the party's agent or employee on a matter within the scope of that

15   relationship and while it existed as an admission by the entity.

16

17

18   **Authority:** Adopted from Judge Haight's charge in *U.S. v. Newman*, 82 Crim. 166

19   (S.D.N.Y. 1982), Tr. 3502, *aff'd*, 722 F.2d 729 (2d Cir.), *cert. denied*, 464 U.S. 863

20   (1983); ., 162 U.S. 613, 622 (1896); Fed. R. Evid. 801 (d)(2); Fed. R. Evid.

21   801(d)(2); *McCall v. Benton*, 2010 Jury Instr. LEXIS 2454 (Circuit Court of Florida,

22   Escambia County Mar. 2, 2010) (deposition testimony); Federal Jury Practice and

23   Instructions, § 105.2; Modern Federal Jury Instructions – Civil,¶ 74-2

24

25

26   **Defendants' Position:**

27       The Municipal Defendants object to this proposed instruction as unnecessary

28   and prejudicial.

8

1    Whether a statement is a party admission and/or admissible evidence is a

2    question of law for the Court to decide.  Instructing the jury on the legal question of

3    whether evidence is admissible or not is thus unnecessary and improper.  The

4    admissibility of the testimony in question will already have been decided if it has

5    been presented to the jury.  Further, the proposed instruction improperly directs the

6    jury to place the same weight on investigative testimony as deposition testimony.

7    Again, it is within the jury's purview to decide how much weight to place on the

8    evidence presented at trial, and the question of whether to place more or less weight

9    on investigative testimony as opposed to deposition testimony will depend on the

10   jury's evaluation of the circumstances surrounding such testimony.  *See, e.g., Thomas*

11   *v. McDonnell-Douglas Helicopter Co.*, 67 F.3d 308 (9th Cir. 1995) ("It is the jury's

12   role, not the district court's or ours to weigh the evidence.").  None of the authorities

13   cited by the SEC support its proposed instruction on this issue.[3]

14   Finally, the term "admission" is a term of art under the rules of evidence.  To

15   lay persons, the word "admission" implies that a statement constitutes an admission

16   of liability or wrongdoing and will improperly prejudice the jury.

17

18

19

20

21

22

23

24

25

26   [3] A number of the SEC's citations to authorities in support of its proposed
27   instructions are either incomplete or improper and could not be located.  For example, the SEC's citation to "*U.S. v. Newman*, 82 Crim. 166 (S.D.N.Y. 1982), Tr. 3502." To
28   the best of counsel's knowledge, there is no "Crim." Reporter.

9

1    **SEC PROPOSED INSTRUCTION**

2    *OTHER ACTS OF THE DEFENDANT*

3

4    During the trial, you may have heard evidence that a Defendant made other

5 false or misleading statements or omissions, which the SEC is not asking you to find

6 the defendant liable for.  You may consider this evidence only for its bearing, if any,

7 on the question of a Defendant's knowledge, intent and motive and for no other

8 purpose.

9

10

11 *Authority*:  Manual of Model Criminal Jury Instructions for the Ninth Circuit, NO.

12 4.3 (2010 ed.).

10

**DEFENDANTS' OBJECTIONS TO SEC PROPOSED INSTRUCTION**

*OTHER ACTS OF THE DEFENDANT*


During the trial, you may have heard evidence that the Defendant made ~~other~~ false or misleading statements ~~or omissions~~, which the SEC is not asking you to find him liable for.  You may consider this evidence only for its bearing, if any, on the question of the Defendant's knowledge, intent and motive and for no other purpose. You may not consider this evidence as evidence of liability on the claims for which the Defendant is now on trial.


**Defendants' Position:**

The Municipal Defendants object to this proposed instruction on the grounds that it is unduly prejudicial.

Absent the admission of evidence at trial of "other false or misleading statements," this instruction as proposed improperly implies that such false or misleading statements do in fact exist.[4]  Further, the use of the term "other" improperly implies that Defendants have made false or misleading statements in connection with the SEC's claims in this case, which is clearly a contested issue.  The proposed instruction's reference to "omissions" is also improper, as the SEC has not pursued an omissions-based theory of liability in this action.[5]

---

[4] The Municipal Defendants reserve the right to seek a similar or modified limiting instruction depending on the evidence presented at trial.

[5] If the Court adopts a version of this instruction, it should, at a minimum, include the additional clarifying text from the current version of the cited Ninth Circuit Model Criminal Instruction No. 4.3, as reflected in redline above.

11

**SEC PROPOSED INSTRUCTION**

*ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED*

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters at issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

All parties had the same nationwide power to subpoena witnesses and documents under the securities law of the United States.

*Authority*:  Manual of Model Jury Instructions (Civil Cases) for the District Courts of the Seventh Circuit, Section 1.18 (modified).

**Defendants' Position:**

The Municipal Defendants object to this proposed instruction on the grounds that it is unnecessary and confusing.  The proposed instruction may be appropriate in a case where a key witness is unavailable to testify at trial or where the defendant in a criminal trial does not take the stand based on Fifth Amendment concerns.  Here, however, there are no such circumstances that would naturally raise questions in the jury's mind as to the absence of certain witnesses or evidence.  Providing this instruction, therefore, will simply confuse the jury and may in fact cause the jury to speculate as to whether additional evidence exists that, for whatever reason, was not presented at trial.

**SEC PROPOSED INSTRUCTION**

*THE SEC'S CLAIMS*

The SEC has alleged several different legal claims against the defendants in this action.

The SEC's First Claim is that the Authority violated Section 17(a)(2) of the Securities Act by obtaining money or property by means of material false statements and omissions in the May 2008 Official Statement, including in the Debt Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the tax increment revenues available to repay the May 2008 bond offering and the projected annual debt service ratio for every bond year after 2008.

The SEC's Second Claim is that the Authority violated Section 10(b) of the Exchange Act and SEC Rule 10b-5(b) by making material false statements and omissions in the May 2008 Official Statement, including the Debt Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the tax increment revenues available to repay the May 2008 bond offering and the projected annual debt service ratio for every bond year after 2008.

The SEC's Third Claim is that the City of Victorville, Mr. Metzler, KND, Mr. Kinsell, and Ms. Williams aided and abetted the Authority's violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5(b) in connection with the Authority's May 2008 bond offering.

The SEC's Fourth Claim is that KND violated Section 17(a)(2) of the Securities Act by obtaining money or property by means of material misrepresentations and omissions to investors in the May 2008 Official Statement, including the Debt Service Schedule and May 2008 Supplement, regarding the tax increment amount available to repay the May 2008 bond offering and the projected annual debt service ratios for every bond year after 2008.

The SEC's Fifth Claim is that KND's violated Section 15B(c)(1) of the

1  Exchange Act and MSRB Rules G-17 and/or G-27.

2          The SEC's Sixth Claim is that Mr. Kinsell aided and abetted KND's violations

3  of Section 15B(c)(1) of the Exchange Act and MSRB Rules G-17 and/or G-27.

4          The SEC's Seventh Claim is that Ms. Williams aided and abetted KND's

5  violations of Section 15B(c)(1) of the Exchange Act and MSRB Rule G-17.

6          All defendants deny these claims.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

1  **DEFENDANTS' OBJECTIONS TO SEC PROPOSED INSTRUCTION**
2  ***THE SEC'S CLAIMS***
3
4      The SEC has alleged several different legal claims against the defendants in
5  this action.
6      The SEC's First Claim is that the Authority violated Section 17(a)(2) of the
7  Securities Act by obtaining money or property by means of material false statements
8  ~~and omissions~~ in the May 2008 Official Statement, ~~including~~ specifically in the Debt
9  Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the
10  projected tax increment revenues available to repay the May 2008 bond offering and
11  the projected annual debt service ratio for every bond year after 2008.
12      The SEC's Second Claim is that the Authority violated Section 10(b) of the
13  Exchange Act and SEC Rule 10b-5(b) by making material false statements ~~and~~
14  ~~omissions~~ in the May 2008 Official Statement, ~~including~~ specifically in the Debt
15  Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the
16  projected tax increment revenues available to repay the May 2008 bond offering and
17  the projected annual debt service ratio for every bond year after 2008.
18      The SEC's Third Claim is that the City of Victorville, Mr. Metzler, KND, Mr.
19  Kinsell, and Ms. Williams aided and abetted the Authority's violation of Section
20  10(b) of the Exchange Act and SEC Rule 10b-5(b) in connection with the Authority's
21  May 2008 bond offering.
22      The SEC's Fourth Claim is that KND violated Section 17(a)(2) of the
23  Securities Act by obtaining money or property by means of material
24  misrepresentations ~~and omissions~~ to investors in the May 2008 Official Statement,
25  ~~including~~ specifically in the Debt Service Schedule and May 2008 Supplement,
26  regarding the projected tax increment amount available to repay the May 2008 bond
27  offering and the projected annual debt service ratios for every bond year after 2008.
28      The SEC's Fifth Claim is that KND's violated Section 15B(c)(1) of the

15

1  Exchange Act and MSRB Rules G-17 and/or G-27.

2        The SEC's Sixth Claim is that Mr. Kinsell aided and abetted KND's violations

3  of Section 15B(c)(1) of the Exchange Act and MSRB Rules G-17 and/or G-27.

4        The SEC's Seventh Claim is that Ms. Williams aided and abetted KND's

5  violations of Section 15B(c)(1) of the Exchange Act and MSRB Rule G-17.

6        All defendants deny these claims.Each of the Defendants deny the claims

7  asserted against them.[6]

8

9

10 **Defendants' Position:**

11       The Municipal Defendants object to the SEC's proposed instruction because it

12 is an improper attempt to expand the scope of their theory of liability at trial.  *See*

13 *Larin Corp. v. Alltrade, Inc.*, No. EDCV061394ODWOPX, 2008 WL 11340058, at

14 *2 (C.D. Cal. Apr. 25, 2008) (court gave "serious consideration to the imposition of

15 sanctions" where plaintiff changed theories of liability, noting, "[t]o make

16 representations both in writing and in open court and then change course is quite

17 frankly unprofessional, unethical and on the eve of trial contemptible").   Throughout

18 this litigation, the SEC has asserted a theory of liability based on alleged

19 misstatements in the May 2008 Official Statement, specifically that the projected tax

20 increment revenues available to repay the May 2008 bond offering and the projected

21 annual debt service ratio for every bond year after 2008 were misstated.  *See* Dkt

22 Nos. 109, 293.

23       The SEC has not articulated any theory of liability based on any other alleged

24 misstatements, and it has not articulated any theory of liability based on alleged

25 omissions.  Accordingly, the SEC should be limited to attempting to establish its case

26

27 [6] The SEC's language improperly implies that all Defendants deny all of the claims, which is inaccurate.  The Municipal Defendants' proposed revision resolves that ambiguity.

28

16

1  based on these alleged misstatements and not be allowed to introduce new theories of
2  liability at trial.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17

**SEC PROPOSED INSTRUCTION**

*SECTION 17(A) – CLAIM ONE – AGAINST THE AUTHORITY*

The SEC claims that the Authority violated Section 17(a)(2) of the Securities Act by obtaining money in the offer and sale of securities by means of material misstatements and omissions in the May 2008 Official Statement, including the Debt Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the tax increment revenues available to repay the May 2008 bond offering and the projected annual debt service ratio for every bond year after 2008.

To prove this claim the SEC must establish, by a preponderance of the evidence, directly or indirectly, that the Authority:

      (1)    obtained money or property in the offer or sale of any securities;

      (2)    by means of an untrue statement of material fact or by omitting a material fact necessary under the circumstances to keep the statement that was made from being misleading;

      (3)    acted knowingly, recklessly or negligently; and

      (4)    used a means or instrumentality of transportation or communication in interstate commerce or the mails as part of the offer or sale.

You are instructed, for purposes of your deliberations on this claim, that the May 2008 bonds are "securities" and that the Authority did use a means or instrumentality of transportation or communication in interstate commerce or the mails. It is up to you to determine whether the SEC has proven the remaining elements of this claim by a preponderance of the evidence.

The term "offer" means any attempt or offer to dispose of or sell, or solicitation of an offer to buy. In other words, an "offer" includes negotiations to sell, or attempts to produce the sale by urging or persuading another to act.

The term "sale" means every contract of sale or disposition of a security, or

18

1  interest in a security, for value. "Disposition" means a "final settlement or
2  determination" of a matter, like transferring title. "For value" means "for money or
3  something else valuable."

6  *Authority*:  Manual of Model Civil Jury Instructions for the Ninth Circuit, No. 4.2
7  (2017 ed.).

19

**<u>DEFENDANTS' OBJECTIONS TO SEC PROPOSED INSTRUCTION</u>**

*SECTION 17(A) – CLAIM ONE – AGAINST THE AUTHORITY*

The SEC claims that the Authority violated Section 17(a)(2) of the Securities Act by obtaining money in the offer and sale of securities by means of material misstatements ~~and omissions~~ in the May 2008 Official Statement, <u>~~including~~</u> <u>specifically in</u> the Debt Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the <u>projected</u> tax increment revenues available to repay the May 2008 bond offering and the projected annual debt service ratio for every bond year after 2008.

To prove this claim the SEC must establish, by a preponderance of the evidence, directly or indirectly, that the Authority:

    (1) obtained money or property in the offer or sale of any securities;

    (2)    by means of an untrue statement of material fact ~~or by omitting a material fact necessary under the circumstances to keep the statement that was made from being misleading~~;

    (3)    acted ~~knowingly, recklessly or~~ negligently; and

    (4)    used a means or instrumentality of transportation or communication in interstate commerce or the mails as part of the offer or sale.

You are instructed, for purposes of your deliberations on this claim, that the May 2008 bonds are "securities" and that the Authority did use a means or instrumentality of transportation or communication in interstate commerce or the mails.  It is up to you to determine whether the SEC has proven the remaining elements of this claim by a preponderance of the evidence.

20

1    The term "offer" means any attempt or offer to dispose of or sell, or solicitation

2    of an offer to buy.  In other words, an "offer" includes negotiations to sell, or

3    attempts to produce the sale by urging or persuading another to act.

4    The term "sale" means every contract of sale or disposition of a security, or

5    interest in a security, for value. "Disposition" means a "final settlement or

6    determination" of a matter, like transferring title. "For value" means "for money or

7    something else valuable."

8

9

10   **Defendants' Position:**

11   As articulated in the Municipal Defendants' objection to the SEC's proposed

12   instruction on "The SEC's Claims" (supra at xx), which is incorporated by reference,

13   the Municipal Defendants object to the inclusion of "omissions" as a potential basis

14   for liability and propose the addition of the term "specifically" to exclude any new

15   theories of liability at trial based on additional undisclosed alleged misstatements.

16   The Municipal Defendants further object to the SEC's proposed instruction on

17   the third element of this claim to the extent it includes the terms "knowingly and

18   recklessly."[7]  It is well-established that a claim under Section 17(a)(2) requires only a

19   showing of negligence.  *See, e.g., SEC v. Phan*, 500 F.3d 895, 907–08 (9th Cir. 2007)

20   ("Violations of Sections 17(a)(2) and (3) require a showing of negligence"); *SEC v.*

21   *Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).  While a Section 17(a)(2)

22   violation may be shown through knowing or reckless conduct, they are not elements

23   of the claim and are thus unnecessary.  Moreover, including these terms confusingly

24   conflates state of mind requirements between Section 17(a)(2) and Section 10(b).

25

26   [7] The only authority cited by the SEC in support of this instruction is the Ninth
27   Circuit Model Civil Jury Instruction, Number 4.2 (2017 ed.).  That instruction,
     however, relates to "Liability of Corporations – Scope of Authority Not in Issue," and
28   has nothing to do with Section 17(a).

1   The terms "knowingly and recklessly" are more properly included in an instruction
2   on Section 10(b) and defined in that context.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

22

1
**SEC PROPOSED JURY INSTRUCTION**

2
*MISREPRESENTATIONS AND OMISSIONS*

3

4
A misrepresentation is a statement a statement of fact that is false or

5
misleading when it is made.

6
An omission is misleading it if affirmatively creates an impression of a state of

7
affairs that differs in a material way from the one that actually exists.  This includes

8
so-called "half-truths" – literally true statements that create a misleading impression

9
if the context in which the statement was made caused the listener or reader to remain

10
unaware of the actual state of affairs.

11
A statement is misleading even if it is literally true if the context in which the

12
statement was made caused the listener or reader to remain unware of the actual state

13
of affairs.  Similarly, silence is misleading where the person had a duty to disclose

14
information.

15

16

17
*Authority*: Manual of Model Civil Jury Instructions for the Ninth Circuit, Nos. 6.3,

18
18.0, 18.2; (2007 ed.) (modified); Section 17(a) of the Securities Act of 1933, 15

19
U.S.C. § 77q(a); *Brody v. Transitional Hosps. Corp*., 280 F.3d 997, 1006 (9th Cir

20
2002) (a statement or omission is misleading it if "affirmatively creates an impression

21
of a state of affairs that differs in a material way from the one that actually exists.");

22
*In re Convergent Tech. Sec. Litig*., 948 F.2d 507, 512 (9th Cir. 1991) (a statement,

23
although literally true, can be misleading).

24

25

26

27

28

23

1    **DEFENDANTS' OBJECTIONS TO SEC PROPOSED INSTRUCTION**
2                    *MISREPRESENTATIONS AND OMISSIONS*

3

4         A misrepresentation is a statement ~~a statement~~ of fact that is false or
5    misleading when it is made.
6         ~~An omission is misleading it if affirmatively creates an impression of a state of~~
7    ~~affairs that differs in a material way from the one that actually exists.  This includes~~
8    ~~so-called "half-truths"—literally true statements that create a misleading impression~~
9    ~~if the context in which the statement was made caused the listener or reader to remain~~
10   ~~unaware of the actual state of affairs.~~
11        A statement <u>may be</u> ~~is~~ misleading even if it is literally true if the context in
12   which the statement was made caused the listener or reader to remain unaware of the
13   actual state of affairs.  ~~Similarly, silence is misleading where the person had a duty to~~
14   ~~disclose information.~~

15

16

17   **Defendants' Position:**

18        The Municipal Defendants object to the inclusion of language regarding
19   "omissions" based liability for the reasons set forth in their objection to the SEC's
20   proposed instruction on "The SEC's Claims" ~~(supra at xx)~~, which is incorporated by
21   reference.
22        The Municipal Defendants' proposed changes, as reflected in redline above,
23   conforms the SEC's proposed instruction (absent references to "omissions" liability)
24   to the text of the current Ninth Circuit Model Jury Instruction No. 18.1, defining
25   "misrepresentation" in the context of securities law claims.

26

27

28

**<u>DEFENDANTS' PROPOSED JURY INSTRUCTION</u>**

*SECTION 10(B) AND RULE 10B-5 CLAIM AGAINST THE AUTHORITY –*

*MISREPRESENTATION*

In considering element 1 of this claim, you must determine whether the SEC has proven by a preponderance of the evidence that the Authority made a statement containing a misrepresentation.

A misrepresentation is a statement of material fact that is false or misleading when it is made.

To find the Authority liable for this claim, you must determine that the Authority made the alleged misrepresentation in the Official Statement for the May 2008 bond offering, specifically in the Debt Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the projected tax increment revenues available to repay the May 2008 bond offering and the projected annual debt service ratio for every bond year after 2008.  You may not find the Authority liable based on statements regarding "Permit Value" in the May 2008 Fiscal Consultant Supplement. You may not find the Authority liable based on statements made in connection with other bond offerings or other transactions.

In considering whether a statement was false or misleading, you should view each statement in the context in which it was made. You must consider an alleged misrepresentation in the complete context in which the Authority conveyed it. You must take into account not only the statements the SEC claims were false or misleading, but also other relevant statements made at the same time.

While it is only necessary for the SEC to prove one material misstatement in order to find the Authority liable for this claim, you must be unanimous as to which particular misstatement you find was misleading.

25

1    [Authority: Adapted from Ninth Circuit Model Civil Jury Instructions 18.1 and 18.2

2    (2017); Fed. R. Civ. P. 48(b); *Janus Capital Group v. First Derivative Traders*, 564

3    U.S. 135 (2011); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 693 (9th Cir.

4    2011); *Lilley v. Charren*, 17 F. App'x 603, 606 (9th Cir. 2001); *Kiyashka v.*

5    *Iasiaworks, Inc.*, No. C 01-3224 SI, 2002 U.S. Dist. LEXIS 9554, at *21 (N.D. Cal.

6    May 15, 2002); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 (3d Cir.

7    1993); *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1470-71 (N.D. Cal. 1996).]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

2   *SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE AUTHORITY –*

3   *MISREPRESENTATIONS AND OMISSIONS*

4

5       In considering element 1 of this claim, you must determine whether the SEC

6   has proven by a preponderance of the evidence that the Authority made a statement

7   containing a misrepresentation or omitted to state a material fact necessary under the

8   circumstances to keep the statement that was made from being misleading.

9       A misrepresentation is a statement of material fact that is false or misleading

10   when it is made.

11       An omission is misleading if it affirmatively creates an impression of a state of

12   affairs that differs in a material way from the one that actually exists.  This includes

13   so-called "half-truths" – literally true statements that create a misleading impression

14   if the context in which the statement was made caused the listener or reader to remain

15   unaware of the actual state of affairs.

16       A statement is misleading even if it is literally true if the context in which the

17   statement was made caused the listener or reader to remain unaware of the actual

18   state of affairs.  Similarly, silence is misleading where the person had a duty to

19   disclose information.

20       To find the Authority liable for this claim, you must determine that the

21   Authority made the alleged misrepresentation or omission in the Official Statement

22   for the May 2008 bond offering, ~~specifically~~ including in the Debt Service Schedule

23   and May 2008 Fiscal Consultant Supplement, regarding the projected tax increment

24   revenues available to repay the May 2008 bond offering and the projected annual

25   debt service ratio for every bond year after 2008.  ~~You may not find the Authority~~

26   ~~liable based on statements regarding "Permit Value" in the May 2008 Fiscal~~

27   ~~Consultant Supplement.  You may not find the Authority liable based on statements~~

28   ~~made in connection with other bond offerings or other transactions.~~

1    ———   In considering whether a statement was false or misleading, you should

2    view each statement in the context in which it was made. You must consider an

3    alleged misrepresentation in the complete context in which the Authority conveyed it.

4    You must take into account not only the statements the SEC claims were false or

5    misleading, but also other relevant statements made at the same time.

6    ———   While it is only necessary for the SEC to prove one material misstatement in

7    order to find the Authority liable for this claim, you must be unanimous as to which

8    particular misstatement you find was misleading.

9

10

11   **SEC's Objections**:

12   <u>First Paragraph</u>

13        The SEC objects to this instruction as it omits "material omissions." With

14   respect to the SEC's claim under Rule 10b-5(b), the Ninth Circuit's model instruction

15   on "Securities – Definition of Recurring Terms" provides: "Rule 10b-5, prohibits the

16   misrepresentation of material facts and the omission of material facts in connection

17   with the purchase or sale of securities."

18

19   <u>Third Paragraph</u>

20        The proposed language regarding "[y]ou may not find the Authority liable

21   based on statements regarding "permit value" as well as the language that "[y]ou may

22   not find the Authority liable based on statements made in connection with other bond

23   offerings or other transactions" is unnecessary in light of the SEC's proposed

24   instruction "The SEC's Claims."

25

26   <u>Fourth Paragraph</u>

27        The SEC objects to the Municipal Defendants' attempt to "contextualize" their

28   alleged false statements. The Municipal Defendants' proposed language is not

1  "adapted" from or found in either No. 18.1 or 18.2 of the Ninth Circuit's Model Civil

2  Jury Instructions.  Nor does the case law cited by the Municipal Defendants support

3  their attempt to "contextualize" an alleged false statement.  This is not a case where

4  the alleged false statements regarding the tax increment available to repay the bonds

5  were corrected, explained or otherwise rendered true or immaterial by other language

6  the Official Statement or by any other information available in the marketplace.  Nor

7  do any of the cases cited by the Municipal Defendants concern proposed jury

8  instructions. *See. e.g*., *Reese v. BP Exploration (Alaska), Inc*. 643 F.3d 681, 693

9  (statement that BP "agrees to conduct all aspects of its operations with reasonable and

10 prudent business judgement" would not be viewed by a reasonable investor that BP

11 was certifying that all of its operations were, in fact, in compliance with the Prudent

12 Operator Standard.");  *Lilley  v. Charren*, 17 Fed. Appx 603, 606 (9th Cir. 2001) (in

13 evaluating statements of "belief," the following factors are considered: whether the

14 statement was genuinely believed, whether there was a reasonable basis for the belief,

15 and whether the speaker was aware of any undisclosed facts tending to seriously

16 undermine the accuracy of the statement.); *Kiyaska v. Iasiaworks, Inc*., No. C 01-

17 3224, 2002 U.S. Dist. LEXIS 9554, *21  (N.D. Cal. May 15, 2002) (granting

18 defendants' motion to dismiss, finding prospectus did not contain any false

19 statements); *In Re Donald J. Trump Casino Sec. Litig*., 7 F.3d 357, 369 (3d Cir. 1993)

20 (affirming dismissal of complaint, where disclaimers, warnings and other cautionary

21 language in prospectus sufficiently warned investors that the Taj Mahal bonds

22 represented a rather risky, speculative investment); *In re Cirrus Logic Sec. Litig*., 946

23 F. Supp. 1446, 1470-71 (in order to prevail in a fraud-on-the-market case, plaintiffs

24 must "demonstrate that a particular statement, when read in light of all the

25 information then available to the market, or a failure to disclose particular

26 information, conveyed a false or misleading impression.")  (citation omitted).

27

28

<u>Fifth Paragraph</u>

The SEC objects to the Municipal Defendants' proposed language that the jury must be unanimous as to which particular misstatement it found to be misleading. Such a requirement is contrary to Ninth Circuit law. *See, e.g., Unites States v. Lyons*, 472 F.3d 1055, 1069 (9th Cir. 2007) ("jury need not be unanimous on the particular false promise"); *United States v. Woods*, 335 F.3d 993, 998-99 (9th Cir. 2003) ("Under the mail fraud statute the government is not required to prove any particular false statement was made."); *United States v. McCormick*, 72 F.3d 1404, 1409 (9th Cir. 1995) (affirming conviction for false statement on passport application in absence of specific unanimity instruction on which of several statements were false, noting that "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict."); *accord, Schad v. Arizona*, 501 U.S. 624, 61 (1991) (noting that a jury must agree unanimously that the government has proven all the elements of the offense, but it "need to agree on the means by which all the elements were accomplished."); *SEC v. Quan*, 817 F.3d 583, 592 (8th Cir. 2016) (jury need not agree on a particular false statement or omission for liability under Section 17(a)(2) or Rule 10b-5(b)); *United States v. Daniel*, No. 13-2399, 2014 U.S. App. LEXIS 7016, (7th Cir. Apr. 15, 2014) (unanimity instruction as to specific fraudulent act or representation not required, as a single false representation or omission used to execute a scheme to defraud is properly characterized as a means to executing the scheme, rather than one of the necessary elements of the offense); *United States v. LaPlante*, 714 F.3d 641, 647 ("the jury is not required to agree on the means – the particular false statement – [defendant] used to carry out her scheme."); *United States v. Rice*, 699 F.3d 1043, 1048 (8th Cir. 2012) (jurors were properly instructed  "that they needed to agree that one of the means had been used [to defraud victims, but that not all needed to agree on the same one."); *United States v. Lee*, 317 F.3d 26, 36 (1st Cir. 2003) (the requirement that a jury must come to a unanimous agreement "on the principal facts underlying its verdict –what

30

1    court have tended to call the elements of the offense … does not extend to subsidiary

2    facts –what [the Supreme Court] has called 'brute facts.'"); *United States v. Yeaman*,

3    195 F.3d 442, 452-55 (3rd Cir. 1999) (rejecting defendant's unanimity proposed

4    unanimity instruction under Section 17 of the Securities Act, noting that a defendant

5    does not have "a right to insist on an instructions requiring unanimous agreement on

6    the means by which each element is satisfied").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEC PROPOSED JURY INSTRUCTION

### *MATERIALITY*

The SEC must prove by a preponderance of the evidence that the defendant's misrepresentation or omission was material.

An factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security.

An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed to the investor as having significantly altered the total mix of information the investor took into account in deciding whether to buy or sell the security.

The question of materiality as to a statement or omission is an objective one, involving the significance of the misrepresented or omitted fact to a reasonable investor.

To deceive a "reasonable investor," the fraud does not have to deceive a person of ordinary intelligence. Once you find there was a fraud, it does not matter whether the intended victim was a gullible or a sophisticated investor, because the securities laws protect the experienced investors as well as unsophisticated ones.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission, not from the perspective of a reasonable investor with the benefit of hindsight.

*Authority*:  Manual of Model Civil Jury Instructions for the Ninth Circuit, No. 18.3 (2017 Ed.) (modified); *Basic v. Levenson*, 485 U.S. 224, 231 (1988); *United States v. Tarallo*, 380 F.3d 1174, 1191 (9th Cir. 2004) amended, 413 F.3d 928 (9th Cir. 2005) ("It is also not a defense to charges of securities fraud and mail fraud that the victim

1  may have been gullible or negligent. The laws against fraud are designed to protect

2  the naive and careless as well as the experienced and careful."); *SEC v. Quan*, Civ.

3  No. 11-723 ADM/JSM, 2013 U.S. Dist. LEXIS 145146, *21 (D. Minn. Oct. 8, 2013)

4  (information must be viewed from the perspective of a reasonable investor at the time

5  the misrepresentation was made, not from the perspective of a reasonable investor

6  with the benefit of hindsight) *citing Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824,

7  829 (8th Cir. 2003).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33

1    **DEFENDANTS' OBJECTIONS TO SEC PROPOSED INSTRUCTION**

2    *MATERIALITY*

3

4    The SEC must prove by a preponderance of the evidence that the defendant's

5    misrepresentation or omission was material.

6    A factual representation concerning a security is material if there is a

7    substantial likelihood a reasonable investor would consider the fact important in

8    deciding whether to buy or sell that security.

9    ~~An omission concerning a security is material if a reasonable investor would~~

10    ~~have regarded what was not disclosed to the investor as having significantly altered~~

11    ~~the total mix of information the investor took into account in deciding whether to buy~~

12    ~~or sell the security.~~

13    ~~The question of materiality as to a statement or omission is an objective one,~~

14    ~~involving the significance of the misrepresented or omitted fact to a reasonable~~

15    ~~investor.~~

16    ~~To deceive a "reasonable investor," the fraud does not have to deceive a person~~

17    ~~of ordinary intelligence. Once you find there was a fraud, it does not matter whether~~

18    ~~the intended victim was a gullible or a sophisticated investor, because the securities~~

19    ~~laws protect the experienced investors as well as unsophisticated ones.~~

20    You must decide whether something was material based on the circumstances

21    as they existed at the time of the statement or omission~~, not from the perspective of a~~

22    ~~reasonable investor with the benefit of hindsight~~.

23

24

25    **Defendants' Position**

26    The Municipal Defendants object to the inclusion of language regarding

27    "omissions" based liability for the reasons set forth in their objection to the SEC's

28    proposed instruction on "The SEC's Claims" ~~(supra at xx)~~, which is incorporated by

34

1  reference.

2  The Municipal Defendants object to the language in the fourth and fifth

3  paragraphs as confusing and inaccurate.  Needlessly referencing the gullibility or

4  sophistication of potential investors will only distract the jury into speculation about

5  the intelligence and experience of investors in the May 2008 bonds.  A reasonable

6  investor is a term that is easily understandable and requires no additional instruction.

7  *See United States v. Sayre*, 434 Fed. Appx. 622, 624 (9th Cir. 2011) (holding district

8  court did not abuse discretion by declining to instruct jury as to meaning of

9  "reasonable investor" because "[t]he term 'reasonable investor' is a concept within

10  the jury's ordinary experience and understanding.").

11  The Municipal Defendants' proposed changes, as reflected in redline above,

12  conforms the SEC's proposed instruction (absent references to "omissions" liability)

13  to the text of the current Ninth Circuit Model Jury Instruction No. 18.3 on

14  "Materiality" in the context of securities law claims.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>SEC PROPOSED JURY INSTRUCTION</u>**

***KNOWINGLY, RECKLESSLY, NEGLIGENCE***

An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident.

An act is also done knowingly if the defendant acts with deliberate ignorance. A defendant is deliberately ignorant if he was aware of high probability that a fact existed yet deliberately avoided learning that fact.  However, a defendant is not deliberately ignorant if he actually believed that the fact did not exist, or was merely reckless or negligent in finding out that fact.

You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

"Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious the defendant must have been aware of it.  A defendant may act recklessly where a defendant had no direct knowledge of the truth or falsity of his or her statements, and made the statements despite not knowing whether they were true or false.

"Negligence" may consist of either doing something a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonable careful person would do under like circumstances.  In other words, negligence is the failure to use ordinary care, the care a reasonably prudent person would exercise under the same or similar circumstances.  In deciding whether this care was exercised in a given case, the conduct in question must be viewed in the light of all the surrounding circumstances as shown by the evidence.

You should be aware that SEC's Section 17(a)(2) claim against the Authority only requires that the defendant acted "negligently," you may still find the defendant violated Section 17(a)(2)  if you find the defendant acted knowingly or recklessly.

36

Negligence is simply the minimum you must find.

*Authority:*  <u>Manual of Model Civil Jury Instructions for the Ninth Circuit</u>, No. 18.3 (2007 ed.) (modified); *Global-Tech Appliances, Inc. v. SEB, S.A.*, __U.S.__, 131 S. Ct. 2060, 2069 (2011) (setting forth deliberate ignorance standard in civil cases); *United States v. Nosal*, 844 F.3d 1024, 1039-40 (9th Cir. 2016) ("We have repeatedly held that a statutory requirement that a criminal defendant acted "knowingly" is "not limited to positive knowledge, but includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it.... We have equated positive knowledge and deliberate ignorance in upholding conspiracy convictions and see no reason to distinguish aiding and abetting liability"); *United States v. Heredia*, 483 F.3d 913, 918 (9th Cir. 2007) (internal citation and alterations omitted); *United States v. Henderson*, 721 F.2d 276, 278 (9th Cir. 1983) ("[A] statute requiring that the accused act with knowledge or knowingly is satisfied by proof acted 'with an awareness of the high probability of the existence of the fact in question.'"); *see also United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) ("To act 'knowingly,' therefore, is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question. When such awareness is present, 'positive' knowledge is not required.")**.** *See, e.g.*, *United States v. Ramos–Atondo*, 732 F.3d 1113, 1120 (9th Cir. 2013) (holding the district court did not abuse its discretion by instructing the jury on a theory of deliberate ignorance in the context of a conspiracy to import marijuana as " '[t]he *Jewell* standard eliminates the need to establish such positive knowledge to obtain a conspiracy conviction' " (alterations in original) (quoting *United States v. Nicholson*, 677 F.2d 706, 711 (9th Cir. 1982)); *Aaron v. SEC*, 446 U.S. 680, 697 (1980); 3 KEVIN F. O'MALLEY ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 120.02 & 120.10 (5th ed. 2000);  Jury Instructions at 32-34,

1   *SEC v. Todd*, No. CV 03-2230 BEN-WMC (C.D. Cal. Mar. 7, 2007) (Docket No.

2   276); 4-82 Leonard Sand, et al., Modern Federal Jury Instructions—Civil, ¶ 82.02,

3   Instruction 82-8 (2013); *United States v. Prince*, 496 F.2d 1289, 1293 (5th Cir. 1974)

4   (affirming Section 10(b) conviction and noting that "direct proof of the appellant's

5   state of mind . . . is not required"); *United States v. LaPlante*, 714 F.3d 641, 644 (1st

6   Cir. 2013) (affirming a jury charge in which the district court explained that "direct

7   proof of intent . . . is not required; intent may be 'established by circumstantial

8   evidence'").

9

10

11   **<u>Defendants' Position</u>**

12        The Municipal Defendants object to the SEC's combined "Knowingly,

13   Recklessly, Negligence" instruction because it is confusing, unnecessary, and

14   inaccurate. The nature of the Parties' dispute is such that a redlined version of this

15   instruction in not feasible.  Accordingly, the parties submit herewith competing

16   versions of their instructions.

17        The SEC's combined proposed instruction on knowingly, recklessly, and

18   negligence creates the substantial risk that the jury will apply the wrong element to

19   the various claims.  The Municipal Defendants' proposal (as reflected in the

20   following instructions), in contrast, is to provide the jury with different instructions

21   on these various elements in connection with the different claims at issue: to provide

22   the jury with an instruction on negligence in connection with the Section 17(a) claim,

23   an instruction on scienter in connection with the Section 10(b) claim, and an

24   instruction on actual knowledge in connection with the aiding and abetting claim.

25        The Municipal Defendants object to the SEC's proposed instructions on

26   "Knowingly" and "Recklessly" to the extent they apply to the scienter element of a

27   Section 10(b) claim.  In the context of a Section 10(b) claim, the required state of

28   mind under controlling case law is "scienter," which incorporates concepts of

38

1 knowing conduct and conscious or deliberate recklessness. As set forth in the

2 Municipal Defendants' Proposed Jury Instruction, "Section 10(b) and Rule 10b-5

3 Claim against the Authority—Scienter," an instruction as to what constitutes scienter

4 in the context of such a claim, is a clearer and more accurate statement of the law

5 than an ungrounded instruction as to general states of mind that draws from criminal

6 cases and civil cases unrelated to securities laws.

7       In addition, as set forth in the Municipal Defendants' Motion for Judgment on

8 the Pleadings, which is incorporated by reference, the SEC's instruction on

9 "knowingly" (and "recklessly") is also inaccurate in the context of a Section 10(b)

10 claim because SEC fails to instruct the jury that only the knowledge or recklessness

11 of the "maker" of a misstatement may be considered in satisfying this element.

12       The Municipal Defendants object to the proposed instruction on "Knowingly"

13 for the additional reason that "Knowing" conduct for the purposes of Section 10(b)

14 differs from the "Actual Knowledge" standard required for aiding and abetting

15 claims. The SEC's proposed combined instruction, however, does not distinguish

16 between these standards, and their remaining instructions do not otherwise purport to

17 instruct the jury on the meaning of "Actual Knowledge." *See* Municipal Defendants'

18 Proposed Jury Instruction [ ] "Aiding and Abetting Claim – Actual Knowledge."

19 Further, the SEC's proposed instructions on deliberate ignorance are confusing and

20 inapposite. All of the authorities that the SEC cites are either criminal cases, civil

21 cases that do not involve securities claims, or securities cases that do not actually

22 address deliberate ignorance.

23       The Municipal Defendants object to the SEC's proposed instruction on

24 "Recklessly" to the extent the second sentence of the fourth paragraph purports to

25 instruct the jury on what is not required for recklessness—that reckless conduct need

26 not require knowledge of a statement's falsity. That point is unnecessary and

27 confusing, as knowing conduct is separately defined. Moreover, to the extent that the

28 SEC purports to employ this definition in connection with the scienter element of

1    Section 10(b), it is misleading and incomplete.  As this Court has already found, in

2    this Circuit, "[s]center requires either 'deliberate recklessness' or 'conscious

3    recklessness."  Dkt. No. 405 at 39 (quoting *Gebhart v. C.W.C.*, 595 F.3d 1034, 1042

4    (9th Cir. 2010)).  In contrast to the Municipal Defendants' proposed instruction on

5    scienter, the SEC's proposed instruction does not instruct the jury on the meaning of

6    "deliberate recklessness."

7            Finally, the Municipal Defendants object to the SEC's instruction on

8    negligence.  The SEC's proposed instruction explains negligence in the context of a

9    reasonably "careful" person, which is not supported by the case law.  Moreover, in

10   contrast to the Municipal Defendants' proposed jury instruction, "Section 17(a)(2)

11   Claim against the Authority- Negligence," the SEC's instruction does not explain

12   how evidence of industry practice, custom, or evidence regarding reasonable reliance

13   on the advice of professionals—important issues for the jury to consider—relate to

14   negligence.  *See SEC v. Stoker*, No. 11 Civ. 7388 (JSR), 2012 WL 3234945

15   (S.D.N.Y. July 31, 2012) (jury instruction number 9).

16

17

18

19

20

21

22

23

24

25

26

27

28

1                   **DEFENDANTS' PROPOSED JURY INSTRUCTION**

2         *SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE AUTHORITY --*

3                            *SCIENTER*

4

5         In considering element 2 of this claim, you must determine whether the SEC

6 has proved by a preponderance of the evidence that the Authority acted with scienter

7 in connection with the alleged misrepresentation in the Official Statement for the

8 May 2008 bond offering.  "Scienter" is a state of mind, requiring an intent to deceive,

9 manipulate, or defraud.  Scienter may be shown by proof that the "maker" of a

10 misrepresentation with an intent to deceive, manipulate or defraud, acted either

11 "knowingly" or with "deliberate recklessness."

12         The "maker" of a misrepresentation acts knowingly when it makes an untrue

13 statement with actual knowledge that the statement was false.

14         The "maker" of a misrepresentation acts with deliberate recklessness when it

15 makes an untrue statement with deliberately reckless disregard for whether the

16 statement was true.

17         "Reckless" means highly unreasonable conduct reflecting intentional or

18 conscious misconduct that is an extreme departure from ordinary care, presenting a

19 clear danger of misleading investors, which is either known to the "maker" of a

20 misrepresentation or is so obvious that the "maker" must have been aware of it.

21         A special word is necessary on scienter on the part of an entity.  A

22 governmental entity, such as the Authority, can only work through actual people who

23 work on behalf of the Authority.  These people are referred to as the Authority's

24 "agents."  In evaluating whether the Authority possessed the necessary scienter, you

25 must determine whether the SEC has proven by a preponderance of the evidence that

26 the person or persons who is the "maker" of the alleged misrepresentation—in other

27 words, the persons with ultimate authority and control over the misrepresentation—

28 possessed scienter.

1    The Court has already determined that Mr. Metzler was not the "maker" of the

2    alleged misrepresentations by the Authority.  Therefore, to find that the Authority

3    possessed scienter, you must determine that the "maker" of the alleged

4    misrepresentations contained in the Official Statement for the May 2008 offering—a

5    person or persons other than Mr. Metzler—acted with scienter.

6

7

8    [Authority: Adapted from Ninth Circuit Model Civil Jury Instruction 18.5

9    (2017); *Gebhart v. SEC*, 595 F.3d 1034, 1041 & n.10 (9th Cir. 2010) ("[I]n the

10   securities fraud context, scienter requires deliberate recklessness, which we defined

11   as conduct reflecting some degree of intentional or conscious misconduct.") (internal

12   quotation marks omitted); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12, 206

13   (1976) (defining scienter as a "mental state embracing intent to deceive, manipulate,

14   or defraud"); *Janus Capital Group v. First Derivative Traders*, 564 U.S. 135 (2011);

15   *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008); *Teamsters Local*

16   *445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir.

17   2008); Dkt. 445 (Order on Motions for Summary Judgment) at 66-67 ("Because

18   Metzler was not ultimately responsible for that statement [in the April 2008 Official

19   Statement], he cannot be charged with a primary violation under Section 10(b).").]

20

21

22

23

24

25

26

27

28

42

1   **SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

2   *SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE AUTHORITY --*

3   *SCIENTER*

4

5   In considering element 2 of this claim, you must determine whether the SEC

6   has proved by a preponderance of the evidence that the Authority ~~acted~~ knowingly or

7   recklessly made ~~with scienter in connection with the alleged~~ a material

8   misrepresentation or omission in the Official Statement for the May 2008 bond

9   offering. "~~Scienter~~" ~~is a state of mind, requiring an intent to deceive, manipulate, or~~

10  ~~defraud. Scienter may be shown by proof that the~~ "~~maker~~" ~~of a misrepresentation~~

11  ~~with an intent to deceive, manipulate or defraud, acted either~~ "~~knowingly~~" ~~or with~~

12  "~~deliberate recklessness.~~"

13  An act is done knowingly if the defendant is aware of the act and does not act

14  through ignorance, mistake or accident. ~~The~~ "~~maker~~" ~~of a misrepresentation acts~~

15  ~~knowingly when it makes an untrue statement with actual knowledge that the~~

16  ~~statement was false.~~

17  ~~The~~ "~~maker~~" ~~of a misrepresentation acts with deliberate recklessness when it~~

18  ~~makes an untrue statement with deliberately reckless disregard for whether the~~

19  ~~statement was true.~~

20  "Reckless" means highly unreasonable conduct ~~reflecting intentional or~~

21  ~~conscious misconduct~~ that is an extreme departure from ordinary care, presenting a

22  clear danger of misleading investors, which is either known to the "~~maker~~" ~~of a~~

23  ~~misrepresentation~~ defendant or is so obvious that the "~~maker~~" defendant must have

24  been aware of it.

25  A special word is necessary on scienter on the part of an entity. A

26  governmental entity, such as the Authority, can only work through actual people who

27  work on behalf of the Authority. These people are referred to as the Authority's

28  "agents." In evaluating whether the Authority ~~possessed the necessary scienter~~ acted

43

1  knowingly or recklessly, you must determine whether the SEC has proven by a
2  preponderance of the evidence that the person or persons who ~~is the "maker" of the~~
3  ~~alleged misrepresentation—in other words, the persons with ultimate authority and~~
4  ~~control over the misrepresentation—possessed scienter~~are agents of the Authority
5  acted knowingly or recklessly.
6       ~~The Court has already determined that Mr. Metzler was not the "maker" of the~~
7  ~~alleged misrepresentations by the Authority.  Therefore, to find that the Authority~~
8  ~~possessed scienter, you must determine that the "maker" of the alleged~~
9  ~~misrepresentations contained in the Official Statement for the May 2008 offering—a~~
10 ~~person or persons other than Mr. Metzler—acted with scienter.~~
11
12
13 **SEC Objections**:
14 <u>First Paragraph</u>
15      The SEC objects to the language describing "scienter" as if "scienter" requires
16 something more than knowing or reckless conduct. As the Ninth Circuit Model Civil
17 Jury Instructions provide, "A defendant acts knowingly when [he] [she] [it] makes an
18 untrue statement with the knowledge that it was false or with reckless disregard for
19 whether the statement was true." *Id*., No. 18.5 (2017 ed). Similarly, "A defendant
20 acts knowingly when [he] [she] [it] omits necessary information with the knowledge
21 that the omission would make the statement false or misleading or with reckless
22 disregard for whether the omission would make the statement false or misleading."
23 *Id*.  This model instruction address the element of scienter.  *Id.*, Comment.  It is thus
24 an erroneous statement of the law to instruct the jury that a defendant, in addition to
25 making an untrue statement with the knowledge that it was false, must also act with
26 an intent to deceive, manipulate, or defraud.
27
28

44

1   Second Paragraph

2       The SEC objects to the use of "maker" as it confuses the concepts of corporate

3   liability and the term "maker" as used in *Janus Capital Group v. First Derivative*

4   *Traders*, 564 U.S. 135 (2011).  *See* SEC's Supplemental Opposition to the Municipal

5   Defendants' *Ex Parte* Application for Judgment on the Pleadings.

6

7   Third Paragraph

8       The SEC objects to the term "maker" for the reasons previously stated. In

9   addition, the SEC objects to the insertion of "deliberate" in front of "reckless" as

10  unduly confusing.  The Ninth Circuit Model Civil Jury Instructions state: "'reckless'

11  means highly unreasonable conduct that is an extreme departure from ordinary care,

12  presenting a danger of misleading investors, which is either known to the defendant

13  or so obvious that the defendant must have been aware of it."  *Id*. No. 18.5 (2017 ed.).

14

15  Fourth Paragraph

16      The SEC objects to the language equating reckless conduct with "intentional or

17  conscious misconduct" as unduly confusing. The Ninth Circuit Model Civil Jury

18  Instruction states: "'reckless' means highly unreasonable conduct that is an extreme

19  departure from ordinary care, presenting a danger of misleading investors, which is

20  either known to the defendant or so obvious that the defendant must have been aware

21  of it."  *Id*. No. 18.5 (2017 ed.).

22

23  Fifth and Sixth Paragraphs

24      The SEC objects to these paragraphs as the confuse the concepts of  corporate

25  liability and the term "maker" as used in *Janus Capital Group v. First Derivative*

26  *Traders,* 564 U.S. 135 (2011). *See* SEC's Supplemental Opposition to the Municipal

27  Defendants' *Ex Parte* Application for Judgment on the Pleadings.

28

1    **<u>DEFENDANTS' PROPOSED JURY INSTRUCTION</u>**

2    *SECTION 17(a)(2) CLAIM AGAINST THE AUTHORITY – NEGLIGENCE*

3

4          For the third element, the SEC must prove that the Authority was negligent in

5    making materially false or misleading statements in connection with the offer to sell

6    or sale of a security.  "Negligence" is the failure to exercise the due diligence, care, or

7    competence that a reasonable person would when making representations, or failing

8    to disclose facts.  Ask yourself: Would a reasonable person have made the

9    statements?

10          In determining whether the Authority was negligent, you may consider any

11   evidence that the Authority reasonably relied upon the other professionals engaged to

12   prepare the May 2008 Official Statement.  You also may consider any evidence of

13   industry practice, custom, or standards as they pertain to a reasonably prudent person

14   in the Authority's position at the time.  However, while industry practice is to be

15   considered, it is not controlling.  The controlling standard is, as previously stated,

16   what a reasonable person in the Authority's position would do or not do under like

17   circumstances.

18

19

20   [Authority:  Adapted from Pattern Civ. Jury Instr. 11th Cir. 6.9 (2013); *SEC v. Dain*

21   *Rauscher, Inc.*, 254 F.3d 852 (9th Cir. 2001); *SEC v. Jensen*, 2013 WL 6499699

22   (C.D. Cal. Dec. 10, 2013); *SEC v. Shanahan*, 646 F.3d 536 (8th Cir. 2011); *SEC v.*

23   *Stoker*, 2012 WL 3234945 (S.D.N.Y. 2012) (jury instruction number 9).]

24

25

26

27

28

46

1  **SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

2  ***SECTION 17(a)(2) CLAIM AGAINST THE AUTHORITY – NEGLIGENCE***

3

4  For the third element, it is sufficient for the SEC to prove, by a preponderance

5  of the evidence, ~~must prove that~~ the Authority was negligent in obtaining money or

6  property by means of any untrue statements or any omissions to state a material fact

7  necessary in order to make the statement made, in light of the circumstances in which

8  they were made, not misleading. ~~making materially false or misleading statements in~~

9  ~~connection with the offer to sell or sale of a security. "Negligence" is the failure to~~

10  ~~exercise the due diligence, care, or competence that a reasonable person would when~~

11  ~~making representations, or failing to disclose facts. Ask yourself: Would a~~

12  ~~reasonable person have made the statements?~~Negligence is the failure to use

13  reasonable care. Reasonable care is the degree of care that a reasonably prudent

14  person would use under like circumstances. Someone can be negligent by doing

15  something that a reasonably prudent person would not have done, or by failing to do

16  something that reasonably prudent person would have done.

17  In determining whether the Authority was negligent, you may consider any

18  evidence that the Authority reasonably relied upon the other professionals engaged to

19  prepare the May 2008 Official Statement. Before any defendant can say he, she, or it

20  acted in good faith reliance on a professional, there must be certain evidence in the

21  record to establish reliance. If there is no such evidence, the defendant cannot say it

22  relied in good faith on professionals and you should not consider the defendant's

23  assertion of reliance.

24  A defendant cannot rely in good faith on other professionals if the defendant

25  knows, or is reckless or negligent in not knowing, that his conduct was improper,

26  notwithstanding the presence of the professional or advice provided by the

27  professional.

28  Thus, if issuer officials or agents charged with preparing or approving an

47

1   Official Statement have actual knowledge of material misstatements and omissions
2   therein, it will not be a defense that other professionals were engaged to participate in
3   the preparation of the offering documents and did not detect, correct or disclose the
4   misstatements or omission.
5       Similarly, if underwriter officials or agents have actual knowledge of material
6   misstatements and omissions in the Official Statement, it will not be a defense that
7   other professionals were engaged to participate in the preparation of the offering
8   documents and did not detect, correct or disclose the misstatements or omissions.
9       In this context, receiving "advice of professionals" means that the professional
10  provided the defendant actual advice; simply meeting with or consulting a
11  professional, or sending documents to a professional, does not constitute receiving
12  advice of a professional.  In addition, silence of a professional is not advice of a
13  professional.
14      You also may consider any evidence of industry practice, custom, or standards
15  as they pertain to a reasonably prudent person in the Authority's position at the time.
16  However, while industry practice is to be considered, it is not controlling.  And
17  compliance with federal securities laws cannot be avoided simply by retaining an
18  outside professional to prepare required documents.
19      The controlling standard is, as previously stated, what a reasonable person in
20  the Authority's position would do or not do under like circumstances.
21
22
23  **SEC Objections:**
24  First Paragraph
25      The SEC objects to the proposed language as it misstates the elements of
26  Section 17(a)(2).  Under Section 17(a)(2) the Authority is not required to make a
27  statement, rather it is a violation of that section if the Authority obtains money of
28  property by means of any untrue statement or material omissions.  The SEC further

48

objects to this instruction, as Section 17(a)(2) can be violated by knowing, reckless or negligent conduct.  *Aaron v. SEC*, 446 U.S. 680 (1980); *Dain Rauscher, Inc.*, 254 F.3d at 856-57; *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 453-54 (3d Cir.1997).  The SEC further objects to the Municipal Defendants' proposed definition of negligence. Should the Court not accept the SEC's proposed definition of negligence, the SEC proposes alternative language which is taken from the Ninth Circuit Model Civil Jury Instructions, No. 6.1 ("Negligence is the failure to use reasonable care.  Reasonable care is the degree of care that a reasonably prudent person would use under like circumstances.  Someone can be negligent by doing something that a reasonably prudent person would not have done, or by failing to do something that a reasonably prudent person would have done").

Second Paragraph

The SEC objects to the Municipal Defendants' "reliance on professional instruction" as it is incomplete, and proposes the insertion of the redlined language, which corresponds to the SEC's proposed instruction on "reliance on professionals." *See SEC v. Wyly*, No. 1:10-cv-05760-JP) (S.D.N.Y) (closing instruction given) (modified); *Markowski v. SEC*, 34 F.3d 99, 104-05 (2d Cir. 1994); *see also Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1101 (2d Cir. 1972); *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997)  (citing *Williamson v. United States*, 207 U.S. 425, 453 (1908)); *see also United States v.  Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *SEC v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007) ("It isn't possible to make out an advice-of-counsel defense without producing the actual advice from an actual lawyer.") (citing  *Markowski*, 34 F.3d at 105); *see also United States v. Rice*, 449 F.3d 887, 896-97 (8th Cir. 2006) (advice-of-counsel instruction not warranted where defendant argued that "he consulted an  attorney" with respect to the  facts at issue "and had counsel at all meetings, including the  meeting at which he made the

49

false statement" because "a defendant is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction"); *SEC v. Nat'l Student Marketing Corp.*, 457 F. Supp. 682, 711 n.68 (D.D.C. 1978) (finding that defendant "did not rely upon actual advice of counsel, but, if at all, on counsel's silence, and this despite the fact that he never asked for a specific opinion on the legality" of the issue, and that this "blind inaction hardly constitute[d] good faith reliance on counsel"); *United States v. Bowden*, 542 F.App'x. 299, 301 (5th Cir. 2013) ("Bowden's reliance on [lawyer's] silence … failed to give an evidentiary basis upon which an advice-of-counsel instruction could be based."); *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008) (reliance on advice of counsel instruction not warranted where defendant "did not produce evidence suggesting that his attorney advised him to act in any particular way" even though there was evidence that attorney "knew of (or should have known of)" underlying facts); *SEC v. Savoy Indus., Inc.*, 665 F.2d 1310, 1314 n.28 (D.C. Cir. 1981); *SEC v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001). In *Howard*, 376 F.3d at 1147, the D.C. Circuit characterized as dictum *Savoy*'s statement that reliance on the advice of counsel is a formal defense. Nevertheless, the principle that "compliance with federal securities laws cannot be avoided simply by retaining outside counsel to prepare required documents" is fully consistent with *Howard*'s recognition that reliance on advice of counsel is not a defense, but only a "relevant consideration in evaluating a defendant's scienter." 376 F.3d at 1147; *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1195 (2d Cir. 1989); *United States v. Roti*, 484 F.3d 934, 935 (7th Cir. 2007) ("That two people cooperate to swindle a third does not excuse either of the schemers, even if one of them is a lawyer."); *see also* Section of Urban, State and Local Government Law of the American Bar Association and National Association of Bond Lawyers, *Disclosure Roles of Counsel in State and Local Government Securities Offerings* at 33, 77 (3d ed. 2009).

1
2
3

**SEC PROPOSED JURY INSTRUCTION**

*LIABILITY OF CORPORATIONS AND OTHER ENTITIES*

4    Under the law, entities, such as the City of Victorville, the Authority, and

5  KND and KND Affiliates are considered to be persons.  Claims against entities can

6  be predicated on the actions of individuals, as entities can only act through its

7  officers, employees, or other agents.  Therefore, an entity is responsible for the acts of

8  its officers, employees, or other agents performed within the scope of their authority.

9    In determining whether an entity defendant has acted knowingly, recklessly or

10  negligently, acts performed and knowledge acquired by the entity's officers,

11  employees, or other agents in the scope of their authority may be imputed to the

12  entity.  In other words, if you find that an individual defendant acted knowingly,

13  recklessly or negligently, you may also find the entity defendant acted knowingly,

14  recklessly or negligently, where the individual defendant is acting within the scope of

15  his or authority, whether express or implied.

16

17

18  ***Authority***:  Manual of Model Civil Jury Instructions for the Ninth Circuit, No. 4.2

19  (2017 ed.); Dkt. No. 405 at 67 (SJ Order "[c]laims against entities are always

20  predicated on the actions of individuals. Thus, entities like the Authority can only

21  "act" through its officers, employees, or other agents."); *SEC v. Manor Nursing*

22  *Centers, Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972); *SEC v. Franco*, 253 F. Supp.

23  2d 720, 728 (S.D.N.Y. 2003) ("a person's knowledge can be attributed to a

24  corporation in connection with actions which that person through his control causes

25  the corporation to take."); *In re Parmalat Securities Litigation*, 684 F. Supp. 2d 453,

26  471 (S.D.N.Y. 2010) (acts performed and knowledge acquired by corporate agent

27  within scope of employment may be imputed to the corporation).  *SEC v. Sells*, No. C

28  11-4941 CW, 2012 WL 3242551, at *9 (N.D. Cal. Aug. 10, 2012) (holding that

51

individual  defendant's conduct and intent may be attributed to the company in determining whether company committed a primary violation that the individual defendant aided and abetted); *SEC v. Koenig*, No. 02 C 2180, 2007 WL 1074901, at *7 (N.D.  Ill. Apr. 5, 2007) (same); *SEC v. Cohen*, No. 4:05CV371-DJS, 2006 WL 2225410, at *4 (E.D. Mo. Aug. 2, 2006) (same); *SEC v. Tourre*, 2014 WL 61864, at *6-7 (S.D.N.Y. Jan. 7, 2014) (negligence of employee may be imputed to corporation under doctrine of respondeat superior); Restatement (Third) of Agency, § 2.04 (2006); see also id., 7.07 ("An employer is subject to vicarious liability for a tort committed by its employees acting within the scope of employment."); Restatement (Second) of Torts § 283, "Conduct of a Reasonable Man: The Standard" (1965) (when the law has not specified a standard, the test is whether the actor's conduct meets a standard of reasonableness.

1  **DEFENDANTS' OBJECTIONS TO SEC PROPOSED INSTRUCTION**

2  *LIABILITY OF CORPORATIONS AND OTHER ENTITIES*

3

4  Under the law, entities, such as the City of Victorville, the Authority, and KND

5  are considered to be persons.  Claims against entities can be predicated on the actions

6  of individuals, as entities can only act through its officers, employees, or other agents.

7  Therefore, an entity is responsible for the acts of its officers, employees, or other

8  agents performed within the scope of their authority.

9  ~~In determining whether an entity defendant has acted knowingly, recklessly or~~

10  ~~negligently, acts performed and knowledge acquired by the entity's officers,~~

11  ~~employees, or other agents in the scope of their authority may be imputed to the~~

12  ~~entity.  In other words, if you find that an individual defendant acted knowingly,~~

13  ~~recklessly or negligently, you may also find the entity defendant acted knowingly,~~

14  ~~recklessly or negligently, where the individual defendant is acting within the scope of~~

15  ~~his or authority, whether express or implied.~~

16

17

18  **Defendants' Position:**

19  The Municipal Defendants object to the second paragraph of the proposed

20  instruction on the grounds that it misstates the law and is unduly prejudicial.  The

21  SEC's proposed language regarding an agent's knowing, reckless or negligent

22  conduct is not an accurate statement of the law as it applies to the SEC's claim under

23  Section 10(b) of the Securities Exchange Act.  As explained in the Municipal

24  Defendants' Motion for Judgment on the Pleadings, only the "maker's" state of mind

25  may be relevant to scienter.[8]  Dkt. No. 437-1 at 11-12.  The SEC's proposed

26

27  _____

[8] To avoid burdening the Court with unnecessary repetition of argument and authorities, the Municipal Defendants incorporate by reference the arguments set forth in its Motion for Judgment on the Pleadings.

28

1   instruction, however, improperly informs the jury that the state of mind of any agent
2   acting within the scope of his or her authority may be considered in determining the
3   state of mind of the principal.
4          The SEC's proposed language is not found in the cited Ninth Circuit Model
5   Jury Instruction, and the case law and other authorities cite in support of this
6   instruction all predate the Supreme Court's decision in *Janus*, which sets forth the
7   current law on "makers" of a misstatement for the purposes of Section 10(b) liability.
8   564 U.S. 135 (2011); *see also ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023,
9   1033 (9th Cir. 2016) (following *Janus* in analyzing whether attorney was the maker
10  of the allegedly false statements); *In re Solarcity Corp. Sec. Litig.*, No. 16-CV-04686-
11  LHK, 2017 WL 3453387, at *25 (N.D. Cal. Aug. 11, 2017) (holding "the United
12  States Supreme Court's interpretation of the word "make" in Rule 10b–5 was based
13  on the text of the regulation and not the circumstances of the parties); *In re Galectin*
14  *Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1270 (11th Cir. 2016) (following
15  *Janus*).
16
17
18
19
20
21
22
23
24
25
26
27
28

54

## SEC PROPOSED JURY INSTRUCTION

### *RELIANCE ON PROFESSIONALS*

You have heard evidence that other professionals were involved in the Authority's May 2008 bond offering.

Reliance on professionals is a factor that you may consider in deciding whether a defendant acted knowingly, recklessly or negligently.

Before any defendant can say he, she, or it acted in good faith reliance on a professional, there must be certain evidence in the record to establish reliance. If there is no such evidence, the defendant cannot say it relied in good faith on professionals and you should not consider defendant's assertion of reliance.

A defendant cannot rely in good faith on other professionals if the defendant knows, or is reckless or negligent in not knowing, that his conduct was improper, notwithstanding the presence of the professional or advice provided by the professional.

Thus, if issuer officials or agents charged with preparing or approving an Official Statement have actual knowledge of material misstatements and omissions therein, it will be not be a defense that other professionals were engaged to participate in the preparation of the offering documents and did not detect, correct or disclose the misstatements or omissions.

Similarly, if underwriter officials or agents have actual knowledge of material misstatements and omissions in the Official Statement, it will be not be a defense that other professionals were engaged to participate in the preparation of the offering documents and did not detect, correct or disclose the misstatements or omissions.

In this context, receiving "advice of professionals" means that the professional provided the defendant actual advice; simply meeting with or consulting a professional, or sending documents to a professional, does not constitute receiving advice of a professional. In addition, silence of a professional is not advice of a

55

professional.

And compliance with federal securities laws cannot be avoided simply by retaining an outside professional to prepare required documents.

*Authority*: *SEC v. Wyly*, No. 1:10-cv-05760-JP) (S.D.N.Y) (closing instruction given) (modified); *Markowski v. SEC*, 34 F.3d 99, 104-05 (2d Cir. 1994); *see also Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1101 (2d Cir. 1972); *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997) (citing *Williamson v. United States*, 207 U.S. 425, 453 (1908)); *see also United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *SEC v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007) ("It isn't possible to make out an advice-of-counsel defense without producing the actual advice from an actual lawyer.") (citing *Markowski*, 34 F.3d at 105); *see also United States v. Rice*, 449 F.3d 887, 896-97 (8th Cir. 2006) (advice-of-counsel instruction not warranted where defendant argued that "he consulted an attorney" with respect to the facts at issue "and had counsel at all meetings, including the meeting at which he made the false statement" because "a defendant is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction"); *SEC v. Nat'l Student Marketing Corp.*, 457 F. Supp. 682, 711 n.68 (D.D.C. 1978) (finding that defendant "did not rely upon actual advice of counsel, but, if at all, on counsel's silence, and this despite the fact that he never asked for a specific opinion on the legality" of the issue, and that this "blind inaction hardly constitute[d] good faith reliance on counsel"); *United States v. Bowden*, 542 F.App'x. 299, 301 (5th Cir. 2013) ("Bowden's reliance on [lawyer's] silence … failed to give an evidentiary basis upon which an advice-of-counsel instruction could be based."); *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008) (reliance on

56

advice of counsel instruction not warranted where defendant "did not produce evidence suggesting that his attorney advised him to act in any particular way" even though there was evidence that attorney "knew of (or should have known of)" underlying facts); *SEC v. Savoy Indus., Inc.*, 665 F.2d 1310, 1314 n.28 (D.C. Cir. 1981); *SEC v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001). In *Howard*, 376 F.3d at 1147, the D.C. Circuit characterized as dictum *Savoy*'s statement that reliance on the advice of counsel is a formal defense. Nevertheless, the principle that "compliance with federal securities laws cannot be avoided simply by retaining outside counsel to prepare required documents" is fully consistent with *Howard*'s recognition that reliance on advice of counsel is not a defense, but only a "relevant consideration in evaluating a defendant's scienter." 376 F.3d at 1147; *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1195 (2d Cir. 1989); *United States v. Roti*, 484 F.3d 934, 935 (7th Cir. 2007) ("That two people cooperate to swindle a third does not excuse either of the schemers, even if one of them is a lawyer."); *see also* Section of Urban, State and Local Government Law of the American Bar Association and National Association of Bond Lawyers, *Disclosure Roles of Counsel in State and Local Government Securities Offerings* at 33, 77 (3d ed. 2009).

**Defendants' Position**

      The Municipal Defendants object because the instruction is based on an affirmative defense of advice of counsel, which is not at issue.[9]

---

[9] Although the instruction is titled "reliance on professionals," the cited authority and related Motion *in limine* No. 7 concern an affirmative defense based on reliance on advice of counsel, which the Municipal Defendants do not assert. The Municipal Defendants' Opposition to Motion *in limine* No. 7 further addresses this point and is incorporated by reference in this objection.

1    Evidence related to reliance on professionals, however, is relevant to
2  demonstrate that the SEC cannot meet its burden of proof on various elements of its
3  claims: namely, whether the Municipal Defendants acted negligently, recklessly, or
4  with a knowing intent to defraud.  "A defense which demonstrates that plaintiff has
5  not met its burden of proof is not an affirmative defense." *Zivkovic v. S. Cal. Edison*
6  *Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).
7    The SEC's instruction is premised on the Municipal Defendants' failure to
8  satisfy the preconditions necessary to assert an advice of counsel affirmative defense.
9  The SEC's proposed instruction therefore improperly shifts the SEC's burden of
10 proof to the Municipal Defendants.  The proposed instruction repeatedly improperly
11 instructs that the Municipal Defendants must "establish reliance" or states that
12 without certain evidence, it is "not [] a defense."  This instruction further specifies
13 that professionals must have provided "actual advice"—which improperly inserts a
14 burden of proof based on the requirements of an affirmative defense of advice of
15 counsel.
16    Because the advice of counsel defense is irrelevant to this case, this instruction
17 is improper, confusing and prejudicial.

58

**SEC PROPOSED JURY INSTRUCTION**

*ISSUER'S DUTIES AND STANDARD OF CARE*

An issuer authorizes and approves the terms of the transaction, and possesses and controls the information most relevant to determinations of its ability to repay the obligations.  An issuer is generally responsible for the accuracy and completeness of the documents by which the securities will be sold, and that responsibility includes ensuring both material accuracy of what is said and the absence of material omissions.  An issuer's disclosure responsibilities cannot be delegated to others.  In other words, the accuracy and sufficiency of the disclosure document are ultimately the issuer's responsibilities.

*Authority*:  Disclosure Roles of Counsel, at 8, 42, 77; *see also* Louis Loss & Joel Seligman, Securities Regulation 4798 (3d ed. 1992); SEC Final Rule 15c-2-12, 1989 Adopting Release, at n. 84. (accuracy and sufficiency of the disclosure document are the issuer's responsibilities); *Union County v. Jaffray*, 4:06-cv-374, 2010 Jury Instr. LEXIS 1451, *19  (S.D. Iowa Dec. 16, 2010) (final instruction re issuer's duty to purchasers: "an issuer of municipal securities owes a duty of disclosure to investors who purchase such securities").

**Defendants' Position:**

The Municipal Defendants object to this proposed instruction because it improperly seeks to usurp the jury's role as the finder of fact, is confusing and unnecessary.

The SEC's proposed instruction includes vague statements regarding an issuer's free-floating "responsibilities" that are undefined and not tied to an element

59

of any claim or defense in this action.  Instructing the jury on an issuer's "responsibilities" purports to impose some type of strict liability on issuers, which is not the case for any of the claims that the SEC has asserted here.  Further, the standard of care that applies to issues is a question of fact for the jury to decide and not the proper subject of a jury instruction.  *See S.E.C. v. EagleEye Asset Mgmt.*, 975 F. Supp. 2d 151, 160 (D. Mass. 2013) ("The proper standard of care is for a jury to decide.").  Finally, none of the authorities cited by the SEC support the proposition that a jury instruction on an issuer's duties or standard of care is appropriate in a case such as this.[10]

---

[10] The SEC's citation to a jury instruction regarding issuer's duties in *Union County* is completely inapposite.  *Union County* did not involve a Section 17a claim or any claim under the securities laws, and the instruction in question was provided in connection with completely different legal theories and facts.  In *Union*, a municipality had sued its underwriter for breach of fiduciary duty, breach of contract, negligence, negligent misrepresentation, and fraud claims against its underwriter. *Union Cty., IA v. Piper Jaffray & Co.*, 741 F. Supp. 2d 1064, 1089 (S.D. Iowa 2010).

1           **SEC PROPOSED JURY INSTRUCTION**

2           *UNDERWRITER'S DUTIES AND STANDARD OF CARE*

3

4           An underwriter is any person who has purchased from an issuer, with a view

5   to, or sells for an issuer in connection with, the distribution of any security, or

6   participates or has direct or indirect participation in any such undertaking.  An

7   underwriter may be one who purchases the offering intending to distribute it rather

8   than hold it for investment, or one who participates in an underwriting.

9           An underwriter must exercise reasonable care to determine if the offering

10  documents contain false or misleading statements and, if so, to correct them.  An

11  underwriter must investigate and disclose material facts that are known or reasonably

12  ascertainable.

13          Further, an underwriter has a duty to make an investigation that would provide

14  him with a reasonable basis for a belief that the key representations in the statements

15  provided to the investors were truthful and complete.

16

17

18  *Authority*:  Manual of Model Civil Jury Instructions for the Ninth Circuit, No. 18.1

19  (2017 Ed.); 15 U.S.C. § 77a(b)(11) (defining "underwriter"); 15 U.S.C. § 80-3(4)

20  (same); *Dolphin and Bradbury Inc. v. SEC*, 512 F.3d 634, 641 (D.C. Cir. 2008) ("An

21  underwriter must investigate and disclose material facts that are known or

22  'reasonably ascertainable."); *SEC v. Dain Rauscher*, 254 F.3d 852, 858 (9th Cir.

23  2001) (holding that the underwriter "had a duty to make an investigation that would

24  provide him with a reasonable basis for a belief that the key representations in the

25  statements provided to the investors were truthful and complete" (citing *Sanders v.*

26  *John Nuveen & Co.*, 554 F.2d 790, 793 (7th Cir. 1977) (recognizing that an

27  underwriter has a duty to investigate an issuer, and that a reckless failure to do so

28  may give rise to 10b-5 liability)); *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480

61

1   F.2d 341, 369-70 (2d Cir. 1973) (The Securities Act places upon underwriters "the

2   primary responsibility for verifying the accuracy and completeness of information

3   provided to potential investors."); *Fed. Hous. Fin. Agency v. Nomura Holding Am.,*

4   *Inc*., 2017 U.S. App LEXIS 18803, *89 (2d Cir. Sept. 28, 2017) (if an underwriter

5   encounters information that suggests a violation of the securities laws – so called "red

6   flags" – reasonable care mandates that it examine them to determine if the offering

7   documents contain a material falsehood and, if so, to correct it.); *SEC v. Big Apple*

8   *Consulting USA, Inc.,* No. 6:09-cv-1963-Orl-28GJK, 2011 Jury Instr. 930, *155-157

9   (M.D. Fla. Dec. 30, 2011) (plaintiff's proposed instruction re duties of underwriters);

10  *In re Worldcom, Inc. Sec. Litig*., 346 F. Supp. 2d 628, 662 (S.D.N.Y. 2004)

11  ("Congress recognized that underwriters occupied a unique position that enabled

12  them to discover and compel **disclosure** of essential facts about the offering.

13  Congress believed that subjecting underwriters to the liability provisions would

14  provide the necessary incentive to ensure their careful investigation of the offering."

15  (*quoting The Regulation of Securities Offerings*, Securities Act Release No. 7606A,

16  63 Fed. Reg. 67171, 67230 (Dec. 4, 1998)); *Pacific Dunlop Holdings v. Allen & Co*.,

17  993 F.2d 578 (7th Cir. 1993) (liability may be found where underwriter fails to correct

18  misstatements contained in official statement); *United States v. United Medical and*

19  *Surgical Supply Corp.*, 989 F.2d 1390, 1402-03 (4th Cir. 1993) (underwriter has duty

20  to conduct a reasonable investigation of any security it recommends to investors);

21  *Hanson v. Berthel Fisher & Co. Fin. Servs*., No. 13-cv-67-LRR, 2014 U.S. Dist.

22  LEXIS 72940 (N.D. Iowa, May 29, 2014) (underwriter is under a duty to conduct a

23  reasonable investigation of the issuer's securities and the issuer's representations

24  about it); *Shores v. M.E. Ratliff Inv. Co*., 1982 U.S. Dist. LEXIS 10653 (N.D. Ala.,

25  Jan. 18, 1982) (an underwriter is under a duty to the investing public to make a

26  reasonable investigation of the issuer of the bonds and to disclose material facts that it

27  knew or that were readily ascertainable); *Sanders v. John Nuveen & Co*., 524 F.2d

28  1064, 1069-70 (7th Cir. 1975), *vacated and remanded*, 425 U.S. 929 (1976) ("An

1  underwriter's relationship with the issuer gives the underwriter access to facts that are

2  not equally available to members of the public who must rely on published

3  information. And the relationship between the underwriter and its customers

4  implicitly involves a favorable recommendation of the issued security. Because the

5  public relies on the integrity, independence and expertise of the underwriter, the

6  underwriter's participation significantly enhances the marketability of the security.

7  And since the underwriter is unquestionably aware of the nature of the public's

8  reliance on his participation in the sale of the issue, the mere fact that he has

9  underwritten it is an implied representation that he has met the standards of his

10  profession in his investigation of the issuer."); MSRB Notice 2002-10 (Mar. 25,

11  2002) (MSRB Rule G-17 requires dealers to disclose to a customer at the time of

12  trade all material facts about a transaction known by the dealer).

13

14

15  **Municipal Defendants' Position:**

16      The Municipal Defendants do not object to the SEC's proposed instruction.

17

18  **KND Defendants' Position:**

19      The KND Defendants object to the SEC's proposed instruction.

20

21

22

23

24

25

26

27

28

63

**SEC PROPOSED JURY INSTRUCTION**

*CLAIM TWO: SECTION 10(b) AND SEC RULE 10b-5(b) – AGAINST THE AIRPORT AUTHORITY*

The SEC claims that the Authority violated Section 10(b) of the Exchange Act and SEC Rule 10b-5(b) by making material misstatements and omissions in the May 2008 Official Statement, including the Debt Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the tax increment revenue available to repay the May 2008 bond offering and the projected annual debt service ratio for every bond year after 2008.

To prove its claim that the Authority violated Section 10(b) of the Exchange Act and SEC Rule 10b-5(b), the SEC must establish, by a preponderance of evidence, that the Authority:

      1.      in connection with the purchase or sale of a security,

      2.      made an untrue statement of material fact or omitted a material fact necessary under the circumstances to keep the statement that was made from being misleading;

      3.      acted knowingly or recklessly; and

      4.      used any means or instrumentality of interstate commerce, or the mails, or any facility of any national securities exchange as part of the purchase or sale.

You are instructed, for purposes of your deliberations on this claim, that the May 2008 bonds are "securities" and that the Authority did use a means or instrumentality of transportation or communication in interstate commerce or the mails.  It is up to you to determine whether the SEC has proven the remaining elements of this claim by a preponderance of the evidence.

The term "in connection with" means some connection or relationship between the deceptive act or conduct and the sale or purchase of securities.  You need not find

1    that the defendant actually participated in any securities transaction in order to find

2    the deceptive conduct was in connection with the purchase or sale of securities.

3    Rather, it is enough if the defendant's conduct and the sale or purchase of securities

4    coincide.

5

6

7    *Authority*:  <u>Manual of Model Civil Jury Instructions for the Ninth Circuit</u>, No. 18.2

8    (2010 ed.); *SEC v. Zandford*, 535 U.S. 813, 821-22 (2002) (the in connection with

9    requirement must be read flexibly and broadly, and "[i]t is enough that the scheme to

10   defraud and the sale of securities coincide"); *United States v. O'Hagen*, 521 U.S. 642,

11   656 (1997) (the in connection with requirement was met because "the securities

12   transaction and the breach of duty . . . coincide[d];" Modern Federal Jury

13   Instructions, Instr. 82-4.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' OBJECTIONS TO SEC PROPOSED INSTRUCTION**

*CLAIM TWO: SECTION 10(b) AND SEC RULE 10b-5(b) – AGAINST THE AIRPORT AUTHORITY*

The SEC claims that the Authority violated Section 10(b) of the Exchange Act and SEC Rule 10b-5(b) by making material misstatements and omissions in the May 2008 Official Statement, including specifically in the Debt Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the projected tax increment revenue available to repay the May 2008 bond offering and the projected annual debt service ratio for every bond year after 2008.

To prove its claim that the Authority violated Section 10(b) of the Exchange Act and SEC Rule 10b-5(b), the SEC must establish, by a preponderance of evidence, that the Authority:

1. in connection with the purchase or sale of a security,

2. made an untrue statement of material fact or omitted a material fact necessary under the circumstances to keep the statement that was made from being misleading;

3. the "maker" of the alleged untrue statement, who is the person or persons with the ultimate authority over the statement, including its content and whether and how to communicate it, made the alleged untrue statement knowingly or with deliberate recklessness, acted knowingly or recklessly; and

4. used any means or instrumentality of interstate commerce, or the mails, or any facility of any national securities exchange as part of the purchase or sale.

66

1        You are instructed, for purposes of your deliberations on this claim, that the

2   May 2008 bonds are "securities," that the May 2008 Official Statement contained

3   statements made in connection with the purchase or sale of a security, and that the

4   Authority did use a means or instrumentality of transportation or communication in

5   interstate commerce or the mails.  You are also instructed that Mr. Metzler is not the

6   "maker" of any of the alleged misstatements in this case.  It is up to you to determine

7   whether the SEC has proven the remaining elements of this claim by a preponderance

8   of the evidence.

9

10

11   **<u>Defendants' Position</u>:**

12        The Municipal Defendants object to the SEC's proposed instruction on Section

13   10(b) for the following reasons:

14        As articulated in the Municipal Defendants' objection to the SEC's proposed

15   instruction on "The SEC's Claims" (supra at xx), which is incorporated by reference,

16   the Municipal Defendants object to the inclusion of "omissions" as a potential basis

17   for liability and the absence of the term "specifically" to exclude any new theories of

18   liability at trial based on additional undisclosed alleged misstatements.

19        As set forth in the Municipal Defendants' Motion for Judgment on the

20   Pleadings, which is incorporated by reference, the SEC's instruction on the third

21   element of this claim is also inaccurate because SEC fails to instruct the jury that only

22   the knowledge or recklessness of the "maker" of a misstatement may be considered in

23   satisfying this element.  Moreover, as the Court has already found that Mr. Metzler is

24   not the "maker" of any alleged misstatements in this case, the jury should be so

25   instructed.  *See, e.g.,* Dkt. No. 405 at 66-67.  The SEC's proposed instruction is also

26   inaccurate in that the scienter element of Section 10(b) requires "deliberate

27   recklessness" (as set forth in the Municipal Defendants' proposed instruction on

28   "Scienter").  *See, e.g.,* Dkt. No. 405 at 39 (quoting *Gebhart v. C.W.C.*, 595 F.3d 1034,

1    1042 (9th Cir. 2010)).

2            Finally, the Municipal Defendants object to this instruction in that it fails to

3    include an instruction on forward-looking statements.  The alleged misstatements at

4    issue are the projected tax increment revenues available to repay the May 2008 Bond

5    Offering and the projected annual debt service ratio for every bond year after 2008.

6    As these alleged misstatements are projections as opposed to statements of existing

7    fact, they constitute forward-looking statements under the Private Securities

8    Litigation Reform Act of 1995.  *See, e.g., No. 84 Empl'r-Teamster Joint Council*

9    *Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003).  As

10   set forth in the Municipal Defendants' proposed instruction on Forward Looking

11   Statements, these projections are subject to unique state of mind requirements in

12   order to be found to violate Section 10(b), which are not included in any of the SEC's

13   proposed instructions.  *See also* Ninth Circuit Model Jury Instruction 18.4 (2017)

14   (Plaintiff must establish: (1) defendant did not actually believe statements; (2) there

15   was no reasonable basis on which to believe statements; or (3) defendant was aware

16   of undisclosed facts tending to seriously undermine the accuracy of the statements).

17

18

19

20

21

22

23

24

25

26

27

28

68

**DEFENDANTS' PROPOSED JURY INSTRUCTION**

*SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE AUTHORITY –*
*ELEMENTS*

As I told you earlier, the SEC alleges that the Authority violated Section 10(b) of the Securities Exchange Act and Rule 10b-5.  Section 10(b) prohibits acts of deception in connection with the purchase or sale of a security.  Rule 10b-5 prohibits the misrepresentation of material facts in connection with the purchase or sale of securities.

The SEC contends that the Authority violated these provisions by knowingly making false or misleading statements in an Official Statement issued in connection with a May 2008 bond offering.  Specifically, the SEC contends that the Official Statement contained materially false or misleading statements by overstating the projected tax increment revenue available to repay the bonds and the projected annual debt service ratio.

On this claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1. The Authority, acting through an agent or agents, made an untrue statement of a material fact in connection with the purchase or sale of securities, specifically in connection with the May 2008 bond offering;

2. The "maker" of the alleged untrue statement in connection with the May 2008 bond offering, who is the person or persons with the ultimate authority over the statement, including its content and whether and how to communicate it, made the alleged untrue statement knowingly or with deliberate recklessness; and

3. The Authority, acting through an agent or agents, used an instrumentality of interstate commerce, such as mail or telephone, in connection with the purchase or sale of securities, regardless of whether the instrumentality itself was used to make an untrue statement.

69

1    If you find that the SEC has proved each of the above elements, your verdict on

2 this claim should be for the SEC.  If, on the other hand, you find that the SEC has

3 failed to prove any one or more of these elements, your verdict on this claim should

4 be for the Authority.

5    I will now provide you with further instructions on some of the terms used in

6 the elements of this claim.  For instructions on who qualifies as a maker of a

7 statement, refer to Jury Instruction No. [ ].  For instructions on the definition of a

8 misrepresentation, refer to Jury Instruction No. [ ].  For instructions on the definition

9 of materiality, refer to Jury Instruction No. [ ].  For instructions on the definitions of

10 security and "in connection with", refer to Jury Instruction No. [ ].  For instructions

11 on a forward-looking statement, refer to Jury Instruction No. [ ].  For instructions on

12 the definition of scienter, refer to Jury Instruction No. [ ].  For instructions on

13 instrumentalities of interstate commerce, refer to Jury Instruction No. [ ].

14

15

16 [Authority: Adapted from Ninth Circuit Model Civil Jury Instructions 18.1 and 18.2

17 (2017); 15 U.S.C. § 78j(b) 17 C.F.R. § 240.10b-5; *S.E.C. v. Platforms Wireless Int'l

18 Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010); *Janus Capital Grp., Inc. v. First

19 Derivative Traders*, 564 U.S. 135, 131 S. Ct. 2296, 2298, 180 L. Ed. 2d 166 (2011);

20 *Sec. & Exch. Comm'n v. City of Victorville*, No. EDCV1300776JAKDTBX at *66

21 (C.D. Cal. June 2, 2017).]

22
23
24
25
26
27
28

70

**SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

*SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE AUTHORITY –*
*ELEMENTS*

~~As I told you earlier~~As to its second claim, the SEC alleges that the Authority violated Section 10(b) of the ~~Securities~~ Exchange Act and Rule 10b-5. ~~Section 10(b) prohibits acts of deception in connection with the purchase or sale of a security.~~ Section 10(b) of the Securities Exchange Act makes it unlawful for any person to employ "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." Rule 10b-5 prohibits the misrepresentation of material facts and the omission of material fact in connection with the purchase or sale of securities.

The SEC contends that the Authority violated these provisions by ~~knowingly~~ making ~~false or misleading statements~~ material misstatements and omissions in ~~an~~ the Official Statement issued in connection with a May 2008 bond offering, including the Debt Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the ~~. Specifically, the SEC contends that the Official Statement contained materially false or misleading statements by overstating the projected~~ tax increment revenue available to repay the bonds and the projected annual debt service ratio for every year after 2008.

On this claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1.  The Authority~~, acting through an agent or agents,~~ made an untrue statement of a material fact or omitted a material fact necessary under the circumstances to keep the statement that was made from being misleading in connection with the purchase or sale of securities, specifically in connection with the May 2008 bond offering; and

2.  The Authority acted knowingly or recklessly. ~~"maker" of the alleged untrue statement in connection with the May 2008 bond offering, who is the~~

71

1  ~~person or persons with the ultimate authority over the statement, including its~~
2  ~~content and whether and how to communicate it, made the alleged untrue~~
3  ~~statement knowingly or with deliberate recklessness; and~~
4  ~~3.      The Authority, acting through an agent or agents, used an~~
5  ~~instrumentality of interstate commerce, such as mail or telephone, in~~
6  ~~connection with the purchase or sale of securities, regardless of whether the~~
7  ~~instrumentality itself was used to make an untrue statement.~~
8  　　　　If you find that the SEC has proved each of the above elements by a
9  preponderance of the evidence, you~~r~~ should find the Authority liable on this
10  claim~~verdict on this claim should be for the SEC~~.  If, on the other hand, you find that
11  the SEC has failed to prove any one or more of these elements, you~~r~~ should find
12  ~~verdict on this claim should be for~~ the Authority not liable on this claim.
13  ~~I will now provide you with further instructions on some of the terms used in~~
14  ~~the elements of this claim.  For instructions on who qualifies as a maker of a~~
15  ~~statement, refer to Jury Instruction No. [ ].  For instructions on the definition of a~~
16  ~~misrepresentation, refer to Jury Instruction No. [ ].  For instructions on the definition~~
17  ~~of materiality, refer to Jury Instruction No. [ ].  For instructions on the definitions of~~
18  ~~security and "in connection with", refer to Jury Instruction No. [ ].  For instructions~~
19  ~~on a forward-looking statement, refer to Jury Instruction No. [ ].  For instructions on~~
20  ~~the definition of scienter, refer to Jury Instruction No. [ ].  For instructions on~~
21  ~~instrumentalities of interstate commerce, refer to Jury Instruction No. [ ].~~
22
23
24  **SEC's Objections:**
25  <u>First Paragraph</u>
26  　　　　The proposed language "Section 10(b) prohibits acts of deception" misstates
27  the language of Section 10(b) and confuses the elements of a claim brought under
28  Rule 10b-5(b) with elements of claims brought under Rule 10b-5(a) and (c). To the

1  extent the Court is inclined to quote Section 10(b), the inserted language directly
2  quotes the statute.  *See* 15 U.S.C. §78j(b).  The SEC further objects to the last
3  sentence of the paragraph, as it omits "material omissions." With respect to the SEC's
4  claim under Rule 10b-5(b), the Ninth Circuit's model instruction on "Securities –
5  Definition of Recurring Terms" provides: "Rule 10b-5, prohibits the
6  misrepresentation of material facts *and the omission of material facts* in connection
7  with the purchase or sale of securities."(emphasis added).

9  Second Paragraph

10       The concept of "knowingly" should be addressed in a separate instruction that
11  includes a discussion of recklessness. *See* Ninth Circuit Model Instruction, No. 18.5
12  (2017 ed.).  The paragraph is also objectionable to the extent it omits "material
13  omissions." The paragraph also lacks sufficient factual detail regarding the Official
14  Statement as it does not mention the debt service schedule or the fiscal consultant's
15  supplement.  Finally, the insertion of "projected" in front of "tax increment revenue"
16  erroneously suggests that the tax increment revenue supporting the May 2008 bonds
17  was not a known fact as of the date of its calculation. *See*  SEC's objections to the
18  Municipal Defendants' proposed instruction on "forward looking statements."

20  Third Paragraph

21       The concept of corporate liability should be addressed in a separate instruction.
22  *See* Ninth Circuit Model Civil Jury Instructions, No. 4.2 (2017 ed.).  Subparagraph 2
23  of the paragraph also misstates the law for the reasons stated in the SEC's
24  Supplemental Opposition to the Municipal Defendants' Ex Parte Motion for
25  Judgment on the Pleadings. Subparagraph 3 of the paragraph is both objectionable, as
26  the concept of corporate liability should be addressed in a separate instruction, and
27  unnecessary, as the parties do not dispute the element of interstate commerce.  *See*
28  Proposed Final Pretrial Conference Order.

1    Fourth Paragraph

2          The jury is being asked to find the defendants liable on this claim; the jury is

3    not called upon to render a verdict "for the SEC."

4

5    Fifth Paragraph

6          The final paragraph, stating what additional jury instructions the jury should

7    consider, is unnecessary, as the jury is elsewhere instructed to consider all of the

8    Court's instructions.  In addition, the SEC objects to each of the Municipal

9    Defendants' proposed jury instructions referenced therein.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED JURY INSTRUCTION**

*SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE AUTHORITY –
MAKER OF A STATEMENT*

A person or entity is the "maker" of a statement only if that person or entity has ultimate authority over the statement, including its content and whether and how to communicate it.

The Court has already determined that Mr. Metzler is not the "maker" of any statements by the Authority that are contained in the Official Statement issued in connection with a May 2008 bond offering.

[Authority: *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 131 S. Ct. 2296, 2298, 180 L. Ed. 2d 166 (2011); *Sec. & Exch. Comm'n v. City of Victorville*, No. EDCV1300776JAKDTBX at *66  (C.D. Cal. June 2, 2017) ("*Janus* limits the 'maker' of a statement only to those with ultimate responsibility for its communication. Under this framework, no individual from the Authority could be responsible for any misstatements contained in its materials unless he or she had individual and complete control over whether such statements would be and were made."); Dkt. 445 (Order on Motions for Summary Judgment) at 66-67 ("Because Metzler was not ultimately responsible for that statement [in the April 2008 Official Statement], he cannot be charged with a primary violation under Section 10(b).").]

75

1    **SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

2    *SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE AUTHORITY –*

3    *MAKER OF A STATEMENT*

4

5    ~~A person or entity is the "maker" of a statement only if that person or entity has~~

6    ~~ultimate authority over the statement, including its content and whether and how to~~

7    ~~communicate it.~~

8    ~~The Court has already determined that Mr. Metzler is not the "maker" of any~~

9    ~~statements by the Authority that are contained in the Official Statement issued in~~

10   ~~connection with a May 2008 bond offering.~~

11

12

13   **SEC's Objections:**

14          The SEC objects to this instruction in its entirety.  First, a separate instruction

15   on the term "maker" is unnecessary, as it is not disputed that the Authority is the

16   "maker" of the statements contained in the Official Statement. Dkt. No. 405 at 67

17   ("[h]ere the Authority, not Metzler, made the statement.").  Second, the language

18   concerning the Court's determination that Metzler was not the "maker" is irrelevant

19   for the reasons stated in the SEC's Supplemental Opposition to the Municipal

20   Defendants' *Ex Parte* Application for Judgment on the Pleadings.

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED JURY INSTRUCTION**

*SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE AUTHORITY –*
*FORWARD-LOOKING STATEMENTS*

In considering whether the Authority made an untrue statement of a material fact, you must distinguish between statements of fact and forward-looking statements.

Predictions, projections and other forward-looking statements, even if ultimately proven incorrect, are generally not statements of fact, but instead forecasts about what may or may not occur in the future.

Predictions, projections and other forward-looking statements may constitute a basis for a violation of Rule 10b-5 only if the SEC proves by a preponderance of the evidence that, at the time the forward-looking statements were made, (1) the maker of the statement from the Authority did not actually believe the statements, (2) there was no reasonable basis for the maker of the statement from the Authority to believe the statements, or (3) the maker of the statement from the Authority was aware of undisclosed facts tending to seriously undermine the accuracy of the statements.

[Authority: Adapted from Ninth Circuit Model Civil Jury Instruction 18.4 (2017)]

1  **SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

2  *SECTION 10(b) AND RULE 10b-5 CLAIM AGAINST THE AUTHORITY –*

3  *FORWARD-LOOKING STATEMENTS*

4

5  ~~In considering whether the Authority made an untrue statement of a material~~

6  ~~fact, you must distinguish between statements of fact and forward-looking statements.~~

7  ~~Predictions, projections and other forward-looking statements, even if~~

8  ~~ultimately proven incorrect, are generally not statements of fact, but instead forecasts~~

9  ~~about what may or may not occur in the future.~~

10  ~~Predictions, projections and other forward-looking statements may constitute a~~

11  ~~basis for a violation of Rule 10b-5 only if the SEC proves by a preponderance of the~~

12  ~~evidence that, at the time the forward-looking statements were made, (1) the maker of~~

13  ~~the statement from the Authority did not actually believe the statements, (2) there was~~

14  ~~no reasonable basis for the maker of the statement from the Authority to believe the~~

15  ~~statements, or (3) the maker of the statement from the Authority was aware of~~

16  ~~undisclosed facts tending to seriously undermine the accuracy of the statements.~~

17

18

19  **SEC's Objections:**

20  The SEC object's to the Municipal Defendants' proposed instruction on

21  "forward looking statements" as this case does not involve any such statements.  The

22  tax increment revenue figures and debt service ratio calculations at issue in this action

23  were not "projections" in the manner of typical forward-looking statements regarding

24  future events.  Instead, the debt service ratio was used to determine compliance with

25  the additional bonds test based on information available *at the time of the offering*.

26  As Fulbright partner Danny Kim explained, and as other witnesses confirmed:  "The

27  additional bond test is a one-time event at the time of issuance. What happens

28  thereafter is irrelevant."  Dkt. No. 309, tab 190 at 356:10-20; *see also* SEC Response

78

1   to Authority's Additional Facts ("RF"), 432 (last para.).  Similarly, the debt service

2   ratio was used to determine the size of the offering, and the size could not change

3   later.  Dkt. No. 294 ("SEC SUF"), Fact 18.

4           Furthermore, witnesses consistently testified that the numbers that Metzler

5   collected from the assessor's office had to be used in calculating the tax increment

6   revenues for purposes of the additional bonds test.  *See* Evidence cited in support

7   SEC's Additional Facts ("AF") 236-240, pp. 209-210 of 266; AF 339-343, p. 228 of

8   266; AF 348-351, pp. 229 of 266.  Under the terms of the indenture, new construction

9   that was not yet on the July 2007 rolls could be included in the calculation of tax

10  increment numbers for purposes of the additional bonds test *only if* the values were

11  provided by the County Tax Assessor.  The indenture provides:

12          The term "Additional Revenues" means, as of the date of

13          calculation, the amount of Pledged Tax Revenues which, as

14          shown in the Consultant's Report, are estimated to be receivable

15          by the Authority within the Fiscal Year following the Fiscal Year

16          in which such calculation is made as a result of increases in the

17          assessed valuation, *per values provided by the County Tax*

18          *Assessor*, or taxable property in the VVEDA Project Area due to

19          either (i) *construction which has been completed but which is not*

20          *then on the tax rolls*, or (ii) *transfer of ownership or any other*

21          *interest in real property which has been recorded but which is*

22          *not then reflected on the tax rolls*.  For purposes of this

23          definition, the term "increases in the assessed valuation" means

24          the amount by which the assessed valuation of taxable property

25          in the VVEDA Project Area in the future is estimated to increase

26          above the assessed valuation of taxable property in the VVEDA

27          Project area (*as reported by an appropriate official of San*

28          *Bernardino County*) as of the date on which such calculation is

79

1       made.

2          *See* Exhibit 1 attached hereto (December 7, 2007 Indenture, definition of

3 "Additional Revenues," (which governed the issuance of the May 2008 bonds))

4 (emphasis added).  Once Metzler obtained those numbers, those numbers had to be

5 used.  *See* Evidence cited in support SEC's Additional Facts ("AF") 236-240, pp.

6 209-210 of 266; AF 339-343, p. 228 of 266; AF 348-351, pp. 229 of 266.  At the time

7 of the May 2008 bond offering, the values that Metzler had collected from the

8 assessor's office were a *historical fact* – they were the numbers that were provided by

9 the appropriate county official, which the additional bonds test in the indenture

10 allowed the Authority to use in the calculation.  The test does not allow a city official

11 in Metzler's position to override the values provided by the assessor's office and to

12 provide a *projection* of the numbers instead; the values *actually provided* by the

13 assessor's office had to be used for purposes of the calculation.  Whether and to what

14 extent the *assessor* was estimating what an *assessor* might do in the future is

15 irrelevant; from the point of view of the Authority, the existing assessor numbers had

16 to be used.[11]

17          Thus, the calculation of tax increment revenues and the debt service ratio is

18 fundamentally different from the forward-looking statements at issue in the cases

19 cited by the Municipal Defendants.  *See Marx v. Computer Sci. Corp.*, 507 F.2d 485,

20 488 (9th Cir. 1974) (forecast of earnings that had no bearing on issuance of security

21 or size of offering); *Kaplan v. Rose,* 49 F.3d 1363, 1375 (9th Cir. 1974) (post-

22 offering optimistic statements).

23

24 _____

25 [11] In cases where the assessor has not provided values, the parties interpreted the indenture as allowing permit values to be used as a *conservative proxy* for values from the assessor's office

26 because, according to a study done by RSG, permit values were almost always lower than values from the assessor's office.  Permit values, like values obtained from the assessor's office, are

27 currently existing numbers at the time of the offering, not projections or forward looking statements.  *See* Evidence cited in support of Dkt. 335, Additional Facts 250-57, pp. 209-211; AF

28 274-279, pp. 214-215.

1          In other words, the assessed values – from which the additional tax increment

2    revenues is computed – is a known fact, provided by the County Assessor.  Those

3    assessed values are not future projections of development that will occur, but rather

4    computed based on *construction which has been completed* and changes in ownership

5    *that have been recorded*.  Again, these are all historical facts used to calculate the tax

6    increment.  In short, simply because the incremental tax revenues to be received in

7    the fiscal year following the fiscal year in which the calculation is made is an

8    estimate, that does not mean the Authority the County Assessor is predicting a future

9    event, as that number is fixed *as of the date of computation*. In this case, all parties

10   understood this, and hence, were seeking information from the County Assessor

11   concerning its assessed valuation of the hangars.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

81

**SEC PROPOSED JURY INSTRUCTION**

*CLAIM THREE: AIDING AND ABETTING – AGAINST THE CITY OF VICTORVILLE, KND, MR. METZLER, MR. KINSELL, AND MS. WILLIAMS*

The SEC claims that the City of Victorville, KND, Mr. Metzler, Mr. Kinsell, and Ms. Williams ("the defendants") aided and abetted the Authority's violations of Section 10(b) and SEC Rule 10b-5(b) by making material false statements and omissions in the May 2008 Official Statement, including the Debt Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the tax increment revenue available to repay the May 2008 bond offering and the projected annual debt service ratio for every bond year after 2008.

To prove this claim the SEC must establish, by a preponderance of the evidence, the following elements:

   1.   That the Authority violated Section 10(b) and SEC Rule 10b-5(b);
   2.   The defendants had actual knowledge of the violation and his or her role in furthering it; and
   3.   The defendants provided substantial assistance in the commission of the violation by the Authority.

If you have found the Authority liable under Section 10(b) and SEC Rule 10b-5, you must find the first element satisfied.

With respect to the second element, the SEC must prove that each of the defendants –Mr. Metzler, Mr. Kinsell, and Ms. Williams—knew that his or her role was part of an overall activity that is improper. The SEC must prove that the defendants knew of the wrong, not that he or she knew that the primary violator (in this case, the Authority) was violating the law.   You should could consider each individual defendant separately, it is not necessary that you find all three of them aided and abetted the Authority in order to find one of them liable for aiding and abetting.

82

1    With respect to the third element, "substantial assistance" means that the

2  defendant's conduct was a substantial factor in causing the violations.  Substantial

3  assistance includes participation in the editing of information for the purpose of

4  marketing securities.

5    Substantial assistance may also be shown by silence or inaction.  Silence or

6  inaction may be a form of "substantial assistance" if you find that a defendant had

7  actual knowledge that material facts were misrepresented or omitted from May 2008

8  Official Statement and that the defendant's silence or inaction was consciously

9  intended to assist or further the primary violation.

10    Silence or inaction may also constitute substantial assistance where the person

11  has a duty to disclose or correct the information.  A duty of disclosure may arise

12  when the parties have a fiduciary or agency relationship, prior dealings or

13  circumstances such that one party has placed trust and confidence in the other.  An

14  issuer**,** and its officials and agents through which it acts, are generally responsible for

15  the accuracy and completeness of the documents by which the securities will be sold,

16  and that responsibility includes ensuring both material accuracy of what is said and

17  the absence of material omissions.  Similarly, underwriters have a duty to correct

18  information in offering documents that they know to be materially misleading.

19

20

21  **Authority:**  Section 20(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(e);

22  *SEC v. Tambone*, 550 F.3d 106, 145 (1st Cir. ), *vacated*, 573 F.3d 54 (1st Cir. 2009),

23  reinstated, in part, 697 F.3d 436 (1st Cir. 2010)  (allegation concerning third element

24  of aiding and abetting – defendant's knowledge and substantial assistance – satisfied

25  by defendant's failure to correct misleading disclosures in prospectuses, given their

26  duties as underwriters); *SEC v. Fehn*, 97 F.3d 1276, 1294 (9th Cir. 1996)

27  ("[s]ubstantial assistance includes participation in the editing of information for the

28  purpose of marketing securities.") (*quoting Molecular Technology Corp. v. Valentine*,

83

1   925 F.2d 910, 918 (6th Cir. 1991)); Dkt. No. 405 at 70 ("[s]ubstantial assistance may
2   be mere silence or inaction. However, a person must have a duty to disclose the
3   information for mere inaction to constitute substantial assistance.  Such a duty arises
4   upon possession of inside information or upon knowing assistance of or participation
5   in a fraudulent scheme.") (*quoting Strong v. France*, 474 F.2d 747, 752 (9th Cir.
6   1973)); *Roberts v. Peat Marwick, Mitchell & Co*., 857 F.2d 646,653 (1988) (same)
7   *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188-89 (9th Cir. 1987) ("Liability
8   may attach even though the aider and abettor assisted in the scheme only by silence or
9   inaction."); *United States v. Kessi*, 868 F.2d 1097, 1103 (9th Cir. 1989) ("[i]t is not
10  necessary for the SEC to show that the person acted in the offer or sale of securities
11  to be liable as an aider and abettor."); *Hamsen v. Smith*, 693 F.2d 932, 943 (9th Cir.
12  1982) (the secondary violator's duty to disclose may arise from a "knowing assistance
13  of or participation in a fraudulent scheme."); *SEC v. ICP Asset Management*, -----
14  (N.D. Cal. 2010) ( "Substantially assisted" means that the defendant's assistance was
15  a substantial factor in causing the securities violation."); *Mendelsohn*, 490 F. Supp.
16  1069 (same); *Paracor Fin., Inc. v. Gen. Electric Capital Corp.*, 96 F.3d 1151, 1157
17  (9th Cir. 1996) ("A duty of disclosure may also arise when the parties have 'a
18  fiduciary or agency relationship, prior dealings or circumstances such that one party
19  has placed trust and confidence in the other.'")
20
21
22
23
24
25
26
27
28

84

1    <u>**DEFENDANTS' OBJECTIONS TO SEC PROPOSED INSTRUCTION**</u>

2    *CLAIM THREE: AIDING AND ABETTING – AGAINST THE CITY OF*

3    *VICTORVILLE, KND, MR. METZLER, MR. KINSELL, AND MS. WILLIAMS*

4

5    The SEC claims that the City of Victorville, KND, Mr. Metzler, Mr. Kinsell,

6    and Ms. Williams ("the defendants") are liable for aiding and abetting the Authority's

7    ~~aided and abetted the Authority~~'salleged violations~~n~~ of Section 10(b) and SEC Rule

8    10b-5(b) based on the Authority's ~~by making~~allegedly material false statements ~~and~~

9    ~~omissions~~ in the May 2008 Official Statement, ~~including~~ specifically in the Debt

10   Service Schedule and May 2008 Fiscal Consultant Supplement, regarding the

11   projected tax increment revenue- available to repay the May 2008 bond offering and

12   the projected annual debt service ratio for every bond year after 2008.[12]

13   To prove this claim the SEC must establish, by a preponderance of the

14   evidence, the following elements:

15

16        1.    That the Authority violated Section 10(b) and SEC Rule 10b-5(b);

17        2.    The defendants had actual knowledge of the violation and his or her

18              role in furthering it; and

19        3.    The defendants provided substantial assistance in the commission

20              of the violation by the Authority.

21

22   If you have found the Authority liable under Section 10(b) and SEC Rule 10b-

23   5, you must find the first element satisfied. If you have found the Authority not liable

24

25   _____

26   [12] The paragraph as written is unclear and implies that the alleged aiders and abettors
     made material false statements.  Further, as discussed in the Municipal Defendants'

27   Objections to the "SEC's Claims," which is incorporated by reference, this
     instruction improperly references an omission-based theory of liability when the SEC

28   has not asserted any such theory.

1  under Section 10(b) and SEC Rule 10b-5, you must find all defendants not liable on
2  this claim.

3       With respect to the second element, the SEC must prove that each of the
4  defendants –Mr. Metzler, Mr. Kinsell, and Ms. Williams—actually knew that the
5  Authority was violating Section 10(b) and Rule 10b-5 in connection with the alleged
6  misrepresentation in the Official Statement for the May 2008 bond offering.  The
7  SEC must also prove that defendants had actual knowledge of his or her own role in
8  furthering a violation by the Authority of Section 10(b) and Rule 10b-5 in connection
9  with the alleged misrepresentation in the Official Statement for the May 2008 bond
10  offering.  knew that his or her role was part of an overall activity that is improper.
11  The SEC must prove that the defendants knew of the wrong, not that he or she knew
12  that the primary violator (in this case, the Authority) was violating the law.   You
13  should could consider each individual defendant separately, it is not necessary that
14  you find all three of them aided and abetted the Authority in order to find one of them
15  liable for aiding and abetting.

16       With respect to the third element, "substantial assistance" means that the
17  defendant's conduct was a substantial factor in causing the violations.  "Substantial
18  assistance" means that the defendant must have played a significant and active role in
19  the primary violation by the Authority, not just the performance of ministerial tasks.
20  Substantial assistance includes participation in the editing of information for the
21  purpose of marketing securities.

22       Substantial assistance may also be shown by silence or inaction.  Silence or
23  inaction may be a form of "substantial assistance" if you find that a defendant had
24  actual knowledge that material facts were misrepresented or omitted from May 2008
25  Official Statement and that the defendant's silence or inaction was consciously
26  intended to assist or further the primary violation.

27       Silence or inaction may also constitute substantial assistance only where the
28  defendant person has a duty to disclose information to potential investors.  or correct

86

1   the information.  A duty of disclosure may arise when the parties have a fiduciary or
2   agency relationship, prior dealings or circumstances such that one party has placed
3   trust and confidence in the other.  Mr. Metzler owes no duty to disclose information
4   to potential investors.  An issuer, and its officials and agents through which it acts,
5   are generally responsible for the accuracy and completeness of the documents by
6   which the securities will be sold, and that responsibility includes ensuring both
7   material accuracy of what is said and the absence of material omissions.  Similarly,
8   underwriters have a duty to correct information in offering documents that they know
9   to be materially misleading.

10

11

12   **Defendants' Position:**

13       The Municipal Defendants object to the SEC's combined "Aiding and
14   Abetting" instruction because it is inaccurate and confusing.

15       First, the SEC's description of the second element of this claim is inaccurate.
16   Without any supporting authority, the SEC improperly purports to craft an instruction
17   out of whole cloth and states that defendants need only have known that their role
18   was "part of an overall activity that is improper."  There is no support for this
19   statement in the law, and the undefined term, "improper" is so vague as to be
20   meaningless.  The Ninth Circuit has definitively held that this element of an aiding
21   and abetting claim requires actual knowledge "of the *primary violation and of his or*
22   *her role in furthering it." SEC v. Fehn*, 97 F.3d 1276, 1288 (1996) (emphasis added).
23   Actual knowledge "of the primary violation" must at a minimum mean actual
24   knowledge that the statement at issue was false.  The SEC's proposed instruction is
25   unsupported by the law, contrary to controlling case law, and so vague as to be
26   meaningless.
27       Second, the SEC's description of the third element of this claim, substantial
28   assistance, is inaccurate as well.  As an initial matter, there is no bright-line rule that

87

1   participation in the editing of information for the purpose of marketing securities, in

2   all instances and for all purposes, constitutes substantial assistance.  Whether such

3   acts constitute substantial assistance will depend on the particular facts and

4   circumstances involved, including: what sections were reviewed and edited, the

5   purpose of the review, the significance of the information reviewed, etc.

6          In addition, while the SEC accurately states that a defendant must have a duty

7   to disclose in order for silence or inaction to constitute substantial assistance, it

8   fundamentally misstates the law on the duty to disclose.  The duty to speak at issue

9   here is a duty owed to the alleged victims of the fraud, potential purchasers of the

10  May 2008 bonds—not a duty owed to anyone else.  *See, e.g., Roberts v. Peat,*

11  *Marwick, Mitchell & Co.*, 857 F.2d 646, 653 (9th Cir. 1988) (holding omission may

12  constitute substantial assistance in aiding and abetting claim only where duty to

13  disclose owed to potential investors is breached).[13]

14         The SEC's statement that a duty to disclose "arises upon the possession of

15  inside information" is clearly inapplicable to this case, as such a duty only applies in

16  the context of insider trading claims, which are not asserted here.  Moreover, the

17  SEC's statement that a duty to speak may arise from "knowing assistance of or

18  participation in a fraudulent scheme" is also inapplicable to this case.  The case from

19  which this language is taken makes clear that a duty to disclose does not arise from

20  mere "knowing assistance" of fraud, but rather *may arise* from knowing assistance

21  specifically involving a duty to correct prior statements made to potential investors—

22

23  [13] *See also Cleary v. Perfectune, Inc.*, 700 F.2d 774, 778 (1st Cir. 1983) (finding no

24  duty to disclose given "the absence of any pre-existing relationship between the [investors] and the defendants" (citing *Strong v. France*, 474 F.2d 747, 752 (9th Cir.

25  1973))); *see also Chiarella v. United States*, 445 U.S. 222, 229 (1980) (referring, in primary-violator case, to "a duty to disclose arising from a relationship of trust and

26  confidence between parties to a transaction" (emphasis added)); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996) (examining, in a

27  primary-violator case, whether defendant had a duty to disclose to the parties "making … investment decision[s]" and whether they "rel[ied] upon the[ir]

28  relationship" with the defendant).

again, facts that are not at issue here and thus inapposite.  *Strong v. France*, 474 F.2d 747, 752 (9th Cir. 1973) (holding duty to disclose "may arise" upon knowing assistance "as in *Anderson*" where the court held a brokerage firm had a duty to disclose its awareness of a fraudulent scheme after it "held … out [a con man, the primary violator] as a favored and valued" commodities trader to its clients.) (*citing Anderson v. Francis I. duPont & Co.*, 291 F. Supp. 705, 709 (D. Minn. 1968)).  The Municipal Defendants propose the additional instruction that Mr. Metzler does not owe any duty to disclose information to potential investors, as no potential grounds for such a duty has been alleged by the SEC.

Finally, the SEC's proposed statement that an issuer and its officials and agents "are generally responsible for the accuracy and completeness of the documents by which securities will be sold" is inaccurate and confusing.  The term "generally responsible" is without context and meaningless.  It is untethered to any element of any claim and simply purports to impose strict liability on an issuer and its officials, which is certainly not the case with any of the claims asserted in this action.

89

**DEFENDANTS' PROPOSED JURY INSTRUCTION**

*AIDING AND ABETTING VIOLATIONS OF SECTION 10(b) OF THE*

*SECURITIES EXCHANGE ACT AND SEC RULE 10b-5*

The SEC's next claim is that Mr. Metzler and the City of Victorville violated the securities laws by knowingly aiding and abetting the alleged violations by the Authority of Section 10(b) and Rule 10b-5.  Section 20(e) of the Securities Exchange Act governs actions for aiding and abetting.  It states that any person who knowingly provides substantial assistance to another person in violation of a provision of the Exchange Act, or in violation of any rule or regulation under the Act, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

The SEC contends that Mr. Metzler aided and abetted violations of Section 10(b) and Rule 10b-5 by providing substantial assistance to the Authority in violating these provisions in connection with the Authority's May 2008 bond offering.

The SEC contends that the City of Victorville, as Mr. Metzler's employer, is liable for aiding and abetting to the same extent that Mr. Metzler may be liable.

On this claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1.    The existence of a violation of Section 10(b) and Rule 10b-5 (known as the "primary violation") by the Authority in connection with the May 2008 bond offering, as defined in Jury Instruction No. [];

2.    Mr. Metzler had actual knowledge of the primary violation;

3.    Mr. Metzler had actual knowledge of his role in furthering the primary violation; and

4.    With such knowledge, Mr. Metzler provided substantial assistance in the primary violation.

90

1    If you find that the SEC has proved each of the above elements, your verdict on

2   this claim should be for the SEC.  If, on the other hand, you find that the SEC has

3   failed to prove any one or more of these elements, your verdict on this claim should

4   be for Mr. Metzler and the City of Victorville.

5    I will now provide you with further instructions on some of the terms used in

6   the elements of this claim.  For an additional instruction on the existence of the

7   Section 10(b) and Rule 10b-5 violation, refer to Jury Instruction No. [ ].  For an

8   instruction on the definition of actual knowledge, refer to Jury Instruction Nos. [ ].

9   For an instruction on what qualifies as substantial assistance, refer to Jury Instruction

10  No. [ ].

11

12

13  [Authority:  Sections 10(b) and 20(e) of the Exchange Act; *SEC v. Fehn*, 97 F.3d

14  1276, 1288 (9th Cir. 1996) (providing elements of aiding and abetting claim under

15  Section 10(b)); *Sec. & Exch. Comm'n v. City of Victorville*, No.

16  EDCV1300776JAKDTBX, 2013 WL 12133651, at *10 (C.D. Cal. Nov. 14,

17  2013), *on reconsideration*, No. EDCV1300776JAKDTBX, 2014 WL 12607683 (C.D.

18  Cal. Jan. 7, 2014); *Sec. & Exch. Comm'n v. Heart Tronics, Inc.*, No.

19  SACV111962JVSANX, 2015 WL 4723632 (C.D. Cal. Mar. 18, 2015) (Jury

20  Instruction No. 27).]

21

22

23

24

25

26

27

28

91

1  **SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

2  *AIDING AND ABETTING VIOLATIONS OF SECTION 10(b) OF THE*

3  *SECURITIES EXCHANGE ACT AND SEC RULE 10b-5*

4

5        The SEC's next claim is that Mr. Metzler and the City of Victorville, KND,

6  Mr. Kinsell and Ms. Williams violated the securities laws by knowingly aiding and

7  abetting the alleged violations by the Authority of Section 10(b) and Rule 10b-5.

8  Section 20(e) of the Securities Exchange Act governs actions for aiding and abetting.

9  It states that any person who knowingly provides substantial assistance to another

10  person in violation of a provision of the Securities Exchange Act, or in violation of

11  any rule or regulation under the Act, shall be deemed to be in violation of such

12  provision to the same extent as the person to whom such assistance is provided.

13  ~~The SEC contends that Mr. Metzler aided and abetted violations of Section~~

14  ~~10(b) and Rule 10b-5 by providing substantial assistance to the Authority in violating~~

15  ~~these provisions in connection with the Authority's May 2008 bond offering.~~

16  ~~The SEC contends that the City of Victorville, as Mr. Metzler's employer, is~~

17  ~~liable for aiding and abetting to the same extent that Mr. Metzler may be liable.~~

18        On this claim, the SEC has the burden of proving each of the following

19  elements by a preponderance of the evidence:

20     ~~1.~~    The existence of a violation of Section 10(b) and Rule 10b-5 (known as

21         the "primary violation") by the Authority in connection with the May

22         2008 bond offering~~, as defined in Jury Instruction No. [];~~.

23     ~~2.~~    The aider-abettor ~~Mr. Metzler~~ had actual knowledge of the primary

24         violation ~~;~~.

25     ~~3.~~1.   ~~Mr. Metzler had actual knowledge of~~ and his or her role in furthering ~~the~~

26         ~~primary violation~~it; and

27     ~~4.~~2.   With such knowledge, ~~Mr. Metzler~~ The aider-abettor provided

28         substantial assistance in the primary violation.

1    If you find that the SEC has proved each of the above elements, your ~~r~~ should

2  find the defendants liable on this ~~verdict on this~~ claim.  ~~should be for the SEC.~~ If, on

3  the other hand, you find that the SEC has failed to prove any one or more of these

4  elements, your ~~verdict on this claim should be for Mr. Metzler and the City of~~

5  ~~Victorville~~ should find the defendants not liable on this claim.

6    ~~I will now provide you with further instructions on some of the terms used in~~

7  ~~the elements of this claim.  For an additional instruction on the existence of the~~

8  ~~Section 10(b) and Rule 10b-5 violation, refer to Jury Instruction No. [ ].  For an~~

9  ~~instruction on the definition of actual knowledge, refer to Jury Instruction Nos. [ ].~~

10  ~~For an instruction on what qualifies as substantial assistance, refer to Jury Instruction~~

11  ~~No. [ ].~~

12

13

14  **SEC Objections:**

15  First Paragraph

16    The SEC objects to the Municipal Defendants' proposed instruction as it does

17  not include the KND Defendants, who are also named in the SEC's Aiding and

18  Abetting Claim. Dkt. No. 109 at 45.

19

20  Second and Third Paragraphs

21    The SEC objects to the instruction's narrow focus on Mr. Metzler and the City,

22  as the KND Defendants are also part of this claim.

23

24  Fourth Paragraph

25    The elements are misstated and repeated with an unnecessary emphasis on Mr.

26  Metzler's knowledge.  In a securities fraud case, a plaintiff sustains a claim of aiding

27  and abetting if it establishes: (1) the existence of a primary violation of the Exchange

28  Act; (2) that the aider-abettor had knowledge of the primary violation; and (3) that the

93

1   aider-abettor knowingly and substantially participated in the wrongdoing.   *SEC v.*
2   *Pasternak*, 561 F. Supp. 2d 459, 500 (D.N.J. 2008).   Furthermore, the concept of
3   corporate liability is addressed in the SEC's separate proposed instruction "Liability
4   of Corporations and Other Entities."
5
6   Fifth Paragraph
7          The jury is being asked to find the defendants liable on this claim; the jury is
8   not called upon to render a verdict "for the SEC."
9
10  Sixth Paragraph
11         The SEC objects to the each of the Municipal Defendants' subsidiary
12  instructions referenced in this paragraph.
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

94

1

### DEFENDANTS' PROPOSED JURY INSTRUCTION

2

*AIDING AND ABETTING CLAIM — PRIMARY VIOLATION*

3

4        In considering element 1 of this claim, you must determine whether the SEC
5  has proved by a preponderance of the evidence that the Authority violated Section
6  10(b) and Rule 10b-5.  I have already explained to you the elements of a violation of
7  Section 10(b) and Rule 10b-5 in Jury Instruction Nos. [].
8        If you do not find the Authority liable for a violation of Section 10(b) and Rule
9  10b-5, then you must return a verdict of "not liable" on the aiding and abetting claim
10 against Mr. Metzler and the City of Victorville.  If you do find that the Authority
11 committed a primary violation of Section 10(b) and Rule 10b-5, proceed to consider
12 the next element.

13

14

15 [Authority: *SEC v. Fehn*, 97 F.3d 1276 (1996); *Sec. & Exch. Comm'n v. Heart*
16 *Tronics, Inc.*, No. SACV111962JVSANX, 2015 WL 4723632 (C.D. Cal. Mar. 18,
17 2015) (Jury Instruction No. 27).]

18

19

20

21

22

23

24

25

26

27

28

95

**SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

*AIDING AND ABETTING CLAIM — PRIMARY VIOLATION*

In considering element 1 of this claim, you must determine whether the SEC
has proved by a preponderance of the evidence that the Authority violated Section
10(b) and Rule 10b-5.  I have already explained to you the elements of a violation of
Section 10(b) and Rule 10b-5 in Jury Instruction Nos. [].

If you do not find the Authority liable for a violation of Section 10(b) and Rule
10b-5, then you must return a verdict of "not liable" on the aiding and abetting claim
against Mr. Metzler and the City of Victorville.  If you do find that the Authority
committed a primary violation of Section 10(b) and Rule 10b-5, proceed to consider
the next element.

**SEC Objections:**

The SEC objects to the entirety of the Municipal Defendants' proposed
instruction as it simply restates the first element of the SEC's aiding and abetting
claim, and again fails to reference the KND Defendants, who are part of that claim.
To the extent the proposed instructions purport to incorporate by reference the
Municipal Defendants' proposed instructions on the elements of a violation of
Section 10(b) and Rule 10b-5, the SEC has previously stated its objections to those
proposed instructions.  *See also* SEC's Supplemental Opposition to the Municipal
Defendants' *Ex Parte* Application for Judgment on the Pleadings.

96

1

**DEFENDANTS' PROPOSED JURY INSTRUCTION**

2

*AIDING AND ABETTING CLAIM — ACTUAL KNOWLEDGE*

3

4        With respect to the second element of the aiding and abetting claim, the SEC

5    must prove by a preponderance of the evidence that Mr. Metzler actually knew that

6    the Authority was violating Section 10(b) and Rule 10b-5 in connection with the

7    alleged misrepresentation in the Official Statement for the May 2008 bond offering.

8        The SEC must also prove by a preponderance of the evidence that Mr. Metzler

9    had actual knowledge of his own role in furthering a violation by the Authority of

10   Section 10(b) and Rule 10b-5 in connection with the alleged misrepresentation in the

11   Official Statement for the May 2008 bond offering.

12       It is not enough for the SEC to prove that Mr. Metzler was careless, negligent

13   or even reckless as to whether the Authority was violating Section 10(b) and Rule

14   10b-5.

15

16

17   [Authority: *SEC v. Fehn*, 97 F.3d 1276 (1996); *Sec. & Exch. Comm'n v. Heart*

18   *Tronics, Inc.*, No. SACV111962JVSANX, 2015 WL 4723632 (C.D. Cal. Mar. 18,

19   2015) (Jury Instruction No. 27).]

20

21

22

23

24

25

26

27

28

97

1    **SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

2    *AIDING AND ABETTING CLAIM — ACTUAL KNOWLEDGE*

3

4    ~~With respect to the second element of the aiding and abetting claim, the SEC~~

5    ~~must prove by a preponderance of the evidence that Mr. Metzler actually knew that~~

6    ~~the Authority was violating Section 10(b) and Rule 10b-5 in connection with the~~

7    ~~alleged misrepresentation in the Official Statement for the May 2008 bond offering.~~

8    ~~The SEC must also prove by a preponderance of the evidence that Mr. Metzler~~

9    ~~had actual knowledge of his own role in furthering a violation by the Authority of~~

10   ~~Section 10(b) and Rule 10b-5 in connection with the alleged misrepresentation in the~~

11   ~~Official Statement for the May 2008 bond offering.~~

12   ~~It is not enough for the SEC to prove that Mr. Metzler was careless, negligent~~

13   ~~or even reckless as to whether the Authority was violating Section 10(b) and Rule~~

14   ~~10b-5.~~

15

16

17   **SEC's Objections:**

18   The SEC object to the entirety of this instruction.  The SEC is not required to

19   prove that the aider-abettor knows that the primary violator is violating the law;

20   rather, all that is required is that the aider-abettor had a general awareness that his or

21   her role was part of an overall activity that was improper.  *See Woodward v. Metro*

22   *Bank of Dallas*, 522 F.2d 84, 95 (5th Cir. 1975); *SEC v. Coffey*, 493 F.2d. 1303, 1316

23   (6th Cir. 1974); *SEC v. Battenberg*, No. 06-14891, 2011 U.S. Dist. LEXIS 88255,

24   *15 (E.D. Mich. Aug. 9, 2011); *SEC v. Delphi Corp.*, No. 06-14891, 2008 U.S. Dist.

25   LEXIS 78671, *15-16 (E.D. Mich. Oct. 8, 2008); *SEC v. Geswein*, 2 F. Supp. 3d

26   1074, 1080-81 (N.D. Ohio Mar. 5, 2014); *SEC v. Huff*, 758 F. Supp. 2d 1288, 1354

27   (S.D. Fla. 2010).  Similarly, to satisfy the "substantial assistance" component of

28   aiding and abetting, the SEC is only required to show that the aider-abettor in some

98

sort associated himself with the venture, that he participated in it as in something he wished to bring about, and that he sought by his action to make it succeed.  *SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012); *SEC v. Johnson*, 530 F. Supp. 2d 325, 337 (D.D.C. 2008).

99

1

### DEFENDANTS' PROPOSED JURY INSTRUCTION

2

*AIDING AND ABETTING CLAIM – SUBSTANTIAL ASSISTANCE*

3

4      With respect to the third element, the SEC must prove by a preponderance of
5    the evidence that Mr. Metzler rendered substantial assistance to the Authority in
6    connection with the alleged misrepresentation in the Official Statement for the May
7    2008 bond offering.

8      "Substantially assisted" means that Mr. Metzler must have played a significant
9    and active role in the primary violation by the Authority, not just the performance of
10   ministerial tasks, and with actual knowledge of his participation in the wrong.  In
11   addition, Mr. Metzler must have acted or failed to act voluntarily and intentionally,
12   not accidentally.

13     Silence or inaction may be a form of "substantial assistance" only if you find
14   that Mr. Metzler had actual knowledge of the alleged fraud and that Mr. Metzler's
15   silence or inaction was consciously intended to aid in the allegedly fraudulent
16   conduct at issue.

17     In addition, the SEC must prove that Mr. Metzler's conduct was a substantial
18   factor in the perpetuation of the underlying violation by the Authority.  If you find
19   that the Authority would have committed the securities violation even without Mr.
20   Metzler's involvement, then Mr. Metzler did not substantially assist in the violation.

21

22

23   [Authority: *SEC v. Fehn*, 97 F.3d 1276 (1996); *Wright v. Shock*, 571 F. Supp. 642,
24   663 (N.D. Cal. 1983); *Strong v. France*, 474 F.2d 747, 752 (9th Cir. 1973);
25   *Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1084 (N.D. Cal. 1979);
26   *Sec. & Exch. Comm'n v. Heart Tronics, Inc.*, No. SACV111962JVSANX, 2015 WL
27   4723632 (C.D. Cal. Mar. 18, 2015) (Jury Instruction No. 27).]

28

**SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

*AIDING AND ABETTING CLAIM – SUBSTANTIAL ASSISTANCE*

With respect to the third element, the SEC must prove by a preponderance of the evidence that ~~Mr. Metzler~~ the aider-abettor rendered substantial assistance to the Authority in connection with the alleged misrepresentation in the Official Statement for the May 2008 bond offering.

"Substantial~~ly assisted~~assistance" means that the aider-abettor in some sort associated himself with the venture, that he or she participated in it as in something he or she wished to bring about, and that he or she sought by his action to make it succeed.~~Mr. Metzler must have played a significant and active role in the primary violation by the Authority, not just the performance of ministerial tasks, and with actual knowledge of his participation in the wrong.  In addition, Mr. Metzler must have acted or failed to act voluntarily and intentionally, not accidentally.~~

Silence or inaction may be a form of "substantial assistance" where ~~only if you find that Mr. Metzler had actual knowledge of the alleged fraud and that Mr. Metzler's~~the aider-abettor's silence or inaction was consciously intended to make the venture succeed~~aid in the allegedly fraudulent conduct at issue~~.

~~In addition, the SEC must prove that Mr. Metzler's conduct was a substantial factor in the perpetuation of the underlying violation by the Authority.  If you find that the Authority would have committed the securities violation even without Mr. Metzler's involvement, then Mr. Metzler did not substantially assist in the violation.~~

**SEC's Objections:**

The SEC objects to this instruction as it misstates the law concerning "substantial assistance."  To satisfy the "substantial assistance" component of aiding and abetting, the SEC is only required to show that the aider-abettor in some sort

associated himself with the venture, that he participated in it as in something he wished to bring about, and that he sought by his action to make it succeed.  *SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012); *SEC v. Johnson*, 530 F. Supp. 2d 325, 337 (D.D.C. 2008).  The SEC is not required to show "but for" causation, or that the primary violator would have committed the violation even without the aider-abettor's involvement.  *See, e.g*., *SEC v. Johnson*, 530 F. Supp. 2d 325, 337 (D.D.C. 2008) (in the context of aiding and abetting violation of the Exchange Act, to constitute "substantial assistance," the primary violation must be a direct or foreseeable result of the aider-abettor's conduct).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED JURY INSTRUCTION**

***AIDING AND ABETTING CLAIM – CITY OF VICTORVILLE***


With respect to the SEC's claim for aiding and abetting against the City of Victorville, the SEC contends that the City of Victorville, as Mr. Metzler's employer, is liable for aiding and abetting to the same extent that Mr. Metzler may be liable.

An entity like the City of Victorville can only act through natural persons who are its agents.  Therefore, if you find that Mr. Metzler is not liable for aiding and abetting, you must also return a verdict of "not liable" on the aiding and abetting claim against the City of Victorville.

If you do find that Mr. Metzler is liable for aiding and abetting, then you should also return a verdict of "liable" on the aiding and abetting claim against the City of Victorville, but only if you find that Mr. Metzler's alleged actions in substantially assisting the Authority's primary violation were undertaken within the scope of his employment with the City of Victorville.  An employee acts within the scope of his employment if the employee is engaged in the performance of duties which were expressly or impliedly assigned to the employee by his employer.  If you find that Mr. Metzler's actions were not within the scope of his employment, then you should return a verdict of "not liable" for the City of Victorville.


[Authority: Adapted from Ninth Circuit Model Civil Jury Instruction 4.5 (2017)]

103

**SEC'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTION**

*AIDING AND ABETTING CLAIM – CITY OF VICTORVILLE*

With respect to the SEC's claim for aiding and abetting against the City of Victorville, the SEC contends that the City of Victorville, as Mr. Metzler's employer, is liable for aiding and abetting to the same extent that Mr. Metzler may be liable.

An entity like the City of Victorville can only act through natural persons who are its agents.  Therefore, if you find that Mr. Metzler is not liable for aiding and abetting, you must also return a verdict of "not liable" on the aiding and abetting claim against the City of Victorville.

If you do find that Mr. Metzler is liable for aiding and abetting, then you should also return a verdict of "liable" on the aiding and abetting claim against the City of Victorville, but only if you find that Mr. Metzler's alleged actions in substantially assisting the Authority's primary violation were undertaken within the scope of his employment with the City of Victorville.  An employee acts within the scope of his employment if the employee is engaged in the performance of duties which were expressly or impliedly assigned to the employee by his employer.  If you find that Mr. Metzler's actions were not within the scope of his employment, then you should return a verdict of "not liable" for the City of Victorville.

**SEC's Objections:**

The SEC's generally agrees with the concepts set forth in the Municipal Defendants' proposed instruction, since the concept of corporate liability extends to both the City and KND, and their respective employees and agents, but the SEC submits a separate, standalone instruction of corporate liability is appropriate. See SEC proposed instruction "Liability of Corporations and Other Entities."

104

**<u>SEC PROPOSED JURY INSTRUCTION</u>**

***RELIANCE/LOSS NOT REQUIRED***

  In order to prove its claims, the SEC is not required to show that any investor or purchaser relied on the statements and/or omissions that the SEC claims were misleading, nor does the SEC have to show that any investor or purchaser lost money as a result of the misstatements or omissions.

***Authority***: *Gebhart v. SEC*, 595 F.3d 1034, 1041 (9th Cir. 2010); *SEC v. Rana Research*, 8 F.3d 1358, 1364 (9th Cir. 1993).

**<u>Defendants' Position:</u>**

  The Municipal Defendants object to this instruction on the grounds that it is unnecessary and improper to instruct the jury as to elements that are not required to be established in this case.  The elements of the SEC's claims are clearly set forth in the instructions regarding those claims, and a separate instruction on what is not at issue will simply confuse the jury.

Dated:     January 5, 2018          Respectfully submitted,


SECURITIES AND EXCHANGE COMMISSION


By: _____ */s/Donald W. Searles*
                Donald W. Searles


ORRICK, HERRINGTON & SUTCLIFFE LLP


By: _____ */s/ James N. Kramer*
                James N. Kramer

Attorneys for Defendant Keith C. Metzler


ARENT FOX LLP


By: _____ */s/ Terree A. Bowers*
                Terree A. Bowers

Attorneys for Defendants Southern California
Logistics Airport Authority and City of Victorville


SLOVAK BARON EMPEY MURPHY &
PINKNEY LLP


By: _____
                Shaun M. Murphy

Attorneys for Defendants Kinsell Newcomb &
DeDios, KND Affiliates LLC, J. Jeffrey Kinsell
and Janees L. Williams

106

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On January 5, 2018, I caused to be served the document entitled **PARTIES' AMENDED DISPUTED JURY INSTRUCTIONS** on all the parties to this action addressed as stated on the attached service list:

☐    **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐    **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐    **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐    **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐    **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐    **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒    **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐    **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  January 5, 2018          */s/ Donald W. Searles*
                                Donald W. Searles

107

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***SEC v. City of Victorville, et al.***
**United States District Court—Central District of California**
**Case No. 5:13-cv-00776-JAK-KK**

<u>**SERVICE LIST**</u>

Terree A. Bowers, Esq.
*terree.bowers@arentfox.com*
Alexander Stephenson Birkhold, Esq.
*alexander.birkhold@arentfox.com*
Jerrold E. Abeles, Esq.
*jerry.abeles@arentfox.com*
Karen Peters-Van Essen, Esq.
*vanessen.karen@arentfox.com*
Arent Fox LLP, Attorneys at Law
Gas Company Tower
555 W. Fifth Street, 48th Floor
Los Angeles, CA 90013

Peter V. B. Unger, Esq.
*peter.unger@arentfox.com*
Arent Fox LLP, Attorneys at Law
1717 "K" Street, N.W.
Washington, DC 20006
*Attorneys for Defendants City of Victorville and Southern California Logistics Airport Authority*

Randall S. Polycn, Esq.
Randall.polycn@gmail.com
5855 Carnegie Street
San Diego, CA 92122

Mark A. Maasch
Maasch Law, Inc.
1220 Rosecrans Street, Suite 910
San Diego, CA 92106

Shaun M. Murphy, Esq.
*murphy@sbemp.com*
Slovak Baron Empey Murphy & Pinkney, LLP
1800 E. Tahquitz Canyon Way
Palm Springs, CA 92262

*Attorneys for Defendants Janees Williams, Jeffrey Kinsell, Kinsell Newcomb & DeDios (KND), KND Affiliates and KND Holdings*

Michael D. Torpey, Esq.
*mtorpey@orrick.com*
James N. Kramer, Esq.
*jkramer@orrick.com*
Lacey Bangle, Esq.
*lbangle@orrick.com*
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105

Kevin M. Askew, Esq.
*kaskew@orrick.com*
Natalie Nahabet, Esq.
*nnahabet@orrick.com*
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90071

George E. Greer, Esq.
*ggreer@orrick.com*
Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA 98104-7087
*Attorneys for Defendant Keith C. Metzler*

108