AMY J. LONGO (Cal. Bar No. 198304)
Email: longoa@sec.gov
DOUGLAS M. MILLER, Cal. Bar No. 240398
Email: millerdou@sec.gov
DONALD W. SEARLES, Cal Bar. No. 135705
Email: searlesd@sec.gov
Attorneys for Plaintiff Securities and Exchange Commission

Mark R. Zehner, Deputy Chief
Municipal Securities and Public Pensions Unit
Philadelphia Regional Office
One Penn Center
1617 JFK Boulevard, Suite 520
Philadelphia, Pennsylvania 19103

Michele Wein Layne, Regional Director
John W. Berry, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF VICTORVILLE, et al.,<br><br>Defendants. | Case No.  5:13-cv-00776-JAK-KK(x)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR INJUNCTIVE AND MONETARY RELIEF AGAINST DEFENDANTS KINSELL, NEWCOMB & DEDIOS, INC. AND JEFFREY KINSELL**<br><br>Date:      December 3, 2018<br>Time:     8:30 a.m.<br>Ctrm:    10B<br>Judge:   Hon. John A. Kronstadt |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF FACTS ..................................................... 1

III.   ARGUMENT ........................................................................ 3

    A.    KND and Kinsell should be permanently enjoined ..................................... 3

    B.    KND and Kinsell should be required to disgorge their ill-gotten gains
        and pay prejudgment interest thereon ............................................................ 7

    C.    Kinsell should be required to pay a civil penalty ..................................... 12

IV.   CONCLUSION .................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Aaron v. SEC*, 446 U.S. 680 (1980) ...................................................................4

*Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973).....10, 11

*Dolphin & Bradbury, Inc. v. SEC*, 512 F.3d 634 (D.C. Cir. 2008) ...........................10

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349 (1987) .............5

*In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628 (S.D.N.Y. 2004).....................11

*In the Matter of Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Exchange Act
    Release No. 40352, 1998 WL 518489 (Aug. 24, 1998)......................................5

*In the Matter of Public Fin. Consultants, Inc.*, SEC Initial Decisions, Release
    No. 274, 2005 SEC LEXIS 433 (Feb. 25, 2005)..............................................9

*In the Matter of Thorn, Alvis, Welch, Inc.*, SEC Initial Decision Release No. 88,
    1996 SEC LEXIS 1237 (May 2, 1996) .........................................................10

*In the Matter of Wheat, First Sec., Inc.*, SEC Initial Decisions Rel. No. 155,
    1999 SEC LEXIS 2863 (Dec. 17, 1999) ....................................................9, 12

*Sanders v. John Nuveen & Co.*, 524 F.2d 1064 (7th Cir. 1975)................................11

*SEC v. Bernath*, No. 3:15CV485, 2017 U.S. Dist. LEXIS 17916 (W.D.N.C.
    Feb. 8, 2017).............................................................................................9

*SEC v. Blavin*, 760 F.2d 706 (6th Cir. 1985) ........................................................9

*SEC v. Blazon*, 609 F.2d 960 (9th Cir. 1979) ........................................................5

*SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185 (D. Nev. 2009) .................8, 13

*SEC v. CMKM Diamonds, Inc.*, 729 F. 3d 1248 (9th Cir. 2013)................................5

*SEC v. Coffey*, 493 F. 2d 1304 (6th Cir. 1974) ......................................................7

*SEC v. Cohn*, 216 F. Supp. 636 (D.N.J. 1963) ......................................................6

*SEC v. Coldicutt*, No. CV 13-01865-RGK (VBKx), 2014 U.S. Dist. LEXIS
    190495 (C.D. Cal. Aug. 8, 2014)..................................................................8

*SEC v. Crofters, Inc.*, 351 F. Supp. 236 (S.D. Ohio 1972)......................................6

*SEC v. Cross Fin. Servs.*, 908 F. Supp. 718 (C.D. Cal. 1995)..................................8

*SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996) .......................................................4, 7

*SEC v. First Pacific Bancorp,* 142 F.3d 1186 (9th Cir. 1998) ..................................7

*SEC v. Ginsburg*, 362 F.3d 1292 (11th Cir. 2004) .................................................7

*SEC v. GLT Dain Rausher, Inc.*, 254 F.3d 852 (9th Cir. 2001) ....................................4

*SEC v. Holschuh*, 694 F.2d 130 (9th Cir. 1982) ...........................................................5

*SEC v. Integrity Fin. AZ, LLC*, No. 1:10-CV 782, U.S. Dist. LEXIS 6758 (E.D. Ohio Jan. 20, 2012)....................................................................................................8

*SEC v. Interlink Data Network*, No. 93 3073 R, 1993 U.S. Dist. LEXIS 20163 (C.D. Cal. Nov. 15, 1993)........................................................................................5

*SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109 (9th Cir. 2006)...........................7, 8

*SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1 (D.D.C. 1998) ...................................13

*SEC v. Kilpatrick*, No. 12-12109, 2014 U.S. Dist. LEXIS 104307 (E.D. Mich. July 31, 2014) .........................................................................................................9

*SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972)...........................7, 8

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) ...............................................................4

*SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995) ......................................................................7

*SEC v. Pentagon Capital Mgmt. PLC*, No. 08 Civ. 3324 (RWS), 2012 U.S. Dist. LEXIS 43046 (S.D.N.Y. Mar. 28, 2012)...................................................13

*SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072 (9th Cir. 2010).......................8

*SEC v. Poirier*, 142 F. Supp. 1033 (D. Ariz. 2001) .....................................................8

*SEC v. Radius Capital Corp.*, NO. 2:11-cv-116-FtM-29DNF, 2016 U.S. Dist. LEXIS 51525 (M.D. Fla. Apr. 20, 2015) ...............................................................6

*SEC v. Rooney*, No. 11 C 8264, 2014 U.S. Dist. LEXIS 95101 (N.D. Ill. July 14, 2014) .........................................................................................................9

*SEC v. Tome*, 833 F.2d 1086 (2d Cir. 1987)..................................................................7

*SEC v. Warren*, 534 F.3d 1368 (11th Cir. 2008) ..........................................................8

*SEC v. Wyly,* 56 F. Supp. 3d 394 (S.D.N.Y. 2014) ......................................................8

*United States v. York*, 890 F. Supp. 1117 (D.D.C. 1995) ............................................9

*Woods v. City Nat'l. Bank & Trust Co. of Chicago*, 312 U.S. 262 (1941).................10

**Federal Statutes**

**Securities Act of 1933**

Section 20(d)(1) [15 U.S.C. § 77t(d)(1)] .....................................................................12

Section 20(d)(2) [15 U.S.C. § 77t(d)(2)] .....................................................................13

Section 20(d)(2)(A) [15 U.S.C. § 77t(d)(2)(A)] .....................................................12, 13

Section 20(d)(2)(B) [15 U.S.C. § 77t(d)(2)(B)].............................................13

Section 20(d)(2)(C) [15 U.S.C. § 77t(d)(2)(C)].............................................13

**Securities Exchange Act of 1934**

Section 21(d)(3) [15 U.S.C. § 78u(d)(3)] ....................................................12

Section 21(d)(3)(A) [15 U.S.C. § 78u(d)(3)(A)] ..........................................13

Section 21(d)(3)(B) [15 U.S.C. § 78u(d)(3)(B)]......................................12, 13

Section 21(d)(3)(C) [15 U.S.C. § 78u(d)(3)(C)] ..........................................13

**Other Authorities**

*In the Matter of Municipal Securities Rulemaking Board*, Order Approving Proposed Rule Change, Exchange Act Rel. No. 15247 (Oct. 19. 1978)...........12

*Statement of the Commission Regarding Disclosure Obligations of Municipal Securities Issuers and Others*, Exchange Act Release No. 33741, 7 Fed. Sec. L. Rep. ¶ 72,442, 1994 WL 73628 (Mar. 9, 1994) ......................................6

**Rules**

MSRB Rule G-17............................................................................11, 12

MSRB Rule G-32(a)(iii)(A)(2) ...............................................................11

## I.   <u>INTRODUCTION</u>

On June 2, 2017, the Court granted the Securities and Exchange Commission's motion for summary judgment as to liability against Kinsell, Newcomb & Dedios, Inc., ("KND") and its president, Jeffery Kinsell ("Kinsell") (collectively "Defendants"), on its claims under Section 17(a)(2) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77q(a)(2) ], and Section 15(B)(c)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o-4] and the Municipal Securities Rulemaking Board ("MSRB") Rules G-17 and G-32(a)(iii)(A)(2), regarding Defendants' failure to disclose their receipt of millions of dollars in bond offering proceeds in connection with a May 2008 bond offering by the Southern California Logistics Airport Authority ("Authority").  *See* Dkt. Nos. 109 (First Amended Complaint, Claims Four, Eight & Nine); 405 (Summary Judgment Order, pp. 82-83).

The SEC now moves the Court for entry of a Final Judgment imposing injunctive and monetary relief against Defendants.  Specifically, the SEC seeks a permanent injunction enjoining KND and Kinsell from future violations of Section 17(a)(2) of the Securities Act and Section 15(B)(c)(1) of the Exchange Act and MSRB Rules G-17 and 32(a)(iii)(A)(2); disgorgement of $133,349.25, together with prejudgment interest in the amount of $60,035.35, for a total of $193,384.60, on a joint and several basis; and a civil penalty against Kinsell equal to the amount of disgorgement, that is $133,349.25.

## II.   <u>STATEMENT OF FACTS</u>

The SEC's case against KND and Kinsell, on which it prevailed on summary judgment, concerned their failure to disclose their extremely unusual financial relationship with the Authority, through which they received millions of dollars in undisclosed payments, which dwarfed their disclosed underwriting fees.  Regardless of whether any of those fees were legitimate, at a minimum, KND and Kinsell were negligent in failing to ensure those financial arrangements were fully and accurately

disclosed to bond investors in connection with the Authority's May 2008 bond offering.

In 1997, KND and its owner, Kinsell, were first engaged as the investment banker for the City of Victorville, and by 2001, KND began serving as the underwriter for the Authority and City.  Dkt. 310-1 (KND Defendants' Statement of Genuine Issues in Response to SEC's Proposed Statement of Uncontroverted Facts in Support of Motion for Summary Judgment Against Defendants Jeffrey Kinsell, KND and KND Affiliates), ¶ 309.  By mid-2006, the Authority learned that the initial contractor hired by the Authority to build four airport hangars at the former George Air Force Base had not paid his subcontractors and had likely diverted some of the Authority's bond proceeds for his own personal benefit.  *See id.* ¶ 316.  To continue with the project, Kinsell agreed to hire a new contractor and supervise the project through KND Affiliates, an entity related by ownership and control to KND, though Kinsell's common ownership and control of both entities. *See id.* ¶¶ 310-313, 318.

From August 2006 through February 2008, the Authority loaned KND Affiliates over $60 million to pay the unpaid subcontractors and to complete the four hangars. *See id.* ¶ 319.  The money loaned to KND Affiliates came from bonds or notes issued by the Authority and underwritten by KND.  *See id.* ¶ 320.  KND Affiliates was to be paid a construction management fee.  *See id.* ¶ 369.  The official statement for the Authority's November 2006 bond offering described the fee as follows:

> For its efforts in overseeing the completion of the Hangar-Facilities, KND Affiliates is in negotiations with the Authority to receive a construction management fee in an amount no greater than 2% of the remaining costs to complete the Hangar Facilities estimated to be approximately $53,700,000.

*Id*. ¶ 369.  From October 2006 through October 2010, KND Affiliates was paid a 2% construction management fee totaling $871,966.  *See id.* ¶¶ 334-337; *see also*

Declaration of William Ackerman In Support of SEC's Request for Injunctive and Monetary Relief ("Ackerman Decl.") ¶ 18, Ex. 7.

In addition to covering the costs of construction, KND Affiliates received at least another $2,452,769 in bond proceeds from the Authority.  *See id.* ¶ 341.[1]  KND Affiliates began accruing these additional amounts in its books and records when the hangar project began in August 2006, and began transferring those funds to KND and other related entities in 2008, after the construction of the hangars were completed.  *See id.* ¶¶ 351, 358-359.  Those transfers continued through 2011.  Ackerman Decl., ¶ 20, Ex. 9.

In granting the SEC summary judgment, the Court found that is undisputed that KND Affiliates ("Affiliates") received, but failed to disclose, in any bond offering, including the May 2008 offering, that it received bond offering proceeds in excess of the 2% management fee. Dkt. 405, p. 82; *see also* Ackerman Decl., ¶ 21.  The Court also found that it was undisputed that Affiliates kept approximately $2.4 million of the proceeds of the loan made to them by the Authority to construct the hangars.  Dkt. No. 405, at p. 82. The Court also found that it is undisputed that such disclosures, had they been made, would have been material to investors in the May 2008 offering.  *Id.*, at p. 83; *see also* Dkt. 310-1, ¶¶ 380-381.

## III.  <u>ARGUMENT</u>

### A.  **KND and Kinsell should be permanently enjoined**

Securities Act Section 20(b) [15 U.S.C. § 77t(b) and Exchange Act Section 21(d) [15 U.S.C. § 78u(d) provide that when the evidence establishes a reasonable likelihood of a future violation of the securities laws, a permanent injunction shall be granted in enforcement actions brought by the SEC.  *SEC v. Fehn*, 97 F.3d 1276,

---

[1] As explained in the Ackerman Decl., Kinsell's entities actually received $2,897,327 in undisclosed fees, not $2,452,769.  Ackerman Decl., ¶ 21.  The difference is attributable to Kinsell's erroneous assertion that Affiliates earned a 2% management fee of $1,316,524, instead of $871,966.  *Id.*

1295-96 (9th Cir. 1996); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).  The granting or denying of injunctive relief rests with the sound discretion of the trial court and is reviewed on appeal for an abuse of discretion or application of an erroneous legal principle.  *Fehn*, 97 F.3d at 1295.  Permanent injunctions may be granted on summary judgment, given the proper record, without hearing testimonial evidence.  *Murphy*, 626 F.2d at 655.  Factors courts typically consider include the degree of scienter involved; the isolated or recurrent nature of the infractions; the defendant's recognition of the wrongful nature of his conduct; the likelihood that, based on the defendant's occupation, future violations might occur; and the sincerity of the defendant's assurances against future violations.

While there is no *per se* rule requiring the issuance of an injunction when the SEC demonstrates a past violation, the existence of past violations may give rise to an inference that there will be future violations, and the fact that the defendant may currently be complying with the securities laws does not preclude an injunction. *Murphy*, 626 F.2d at 655 (rejecting defendant's assurances against future violations as "it implies that a defendant may always defeat a permanent injunction on summary judgment if he merely states under oath that he will not commit violations in the future."); *Fehn*, 97 F.3d at 1295 (existence of past violations may give rise to an inference that there will be future violations).

Regarding the first *Murphy* factor, there is no need for the SEC to need to show that Kinsell acted with scienter to obtain an injunction under Section 17(a)(2) of the Securities Act or Section 15B(c)(1) of the Exchange Act.  Violations of Section 17(a)(2) may be established by a showing of negligence.  *Aaron v. SEC*, 446 U.S. 680, 697 (1980) ("It is our view, in sum, that the language of 17(a) requires scienter under 17(a)(1), but not under 17(a)(2) or 17(a)(3).").  Similarly, violations of MSRB Rules G-17 and G-32 only require a showing of negligence.  *SEC v. GLT Dain Rausher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001) (MSRB Rule G-17); *In the Matter of Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Exchange Act Release No. 40352, 1998

Case No. EDCV 13-0776 JAK-KK(x)

WL 518489, at *13 (Aug. 24, 1998) (same).  As the Ninth Circuit has explained, "considering the purposes of injunction, to assure compliance with the act, and to protect the public against future noncompliance, …[there] is no reason to require a finding of specific intent to defraud as a predicate for an injunction under Section 17(a)(2)."  *SEC v. Blazon*, 609 F.2d 960, 965 (9th Cir. 1979) (collecting cases); s*ee also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1352 (1987) ("negligence – and not scienter – suffices to support a SEC injunction action under sections 17(a)(2) and (a)(3)").[2]

Here, the totality of the circumstances weighs in favor of a permanent injunction against KND and Kinsell.  Although KND and Kinsell have been found liable under Section 17(a)(2) of the Securities Act and Section 15B(c)(1) of the Exchange Act and MSRB Rules G-17 and G-32(a)(iii)(2) for their negligence in failing to disclose the amount of their fees, there is no question that Kinsell, a municipal securities underwriter with decades of experience, was fully aware of KND's disclosure obligations and knew that such disclosures, had they been made, would have been material to investors.  Dkt. 310-1, ¶¶ 380-381.[3]  Nor were the required disclosures insignificant.  Indeed, the undisclosed financial relationships among KND Affiliates, KND and the Authority, and the true extent of the millions of

---

[2] Indeed, courts routinely impose permanent injunctions enjoining future violations of the registration provisions of Section 5 of the Securities Act [15 U.S.C. § 77e], and the broker registration provisions of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o], both of which are strict liability statutes.  *See SEC v. CMKM Diamonds, Inc.*, 729 F. 3d 1248, 1257 (9th Cir. 2013); *SEC v. Holschuh*, 694 F.2d 130, 137 n.10 (9th Cir. 1982) ("good faith is not relevant to whether there has been a primary violation of the registration requirements"); *SEC v. Interlink Data Network*, No. 93 3073 R, 1993 U.S. Dist. LEXIS 20163, at *46 (C.D. Cal. Nov. 15, 1993) (scienter not required to prove violation of Section 15(a)(1)).

[3] As Kinsell testified, if he were an investor, he would have wanted to know if KND Affiliates was receiving bond proceeds because "I'd want to know who's doing what projects, and the potential is I'm trying to sell the bonds to have other activities."  He added that investors should know that "[w]e were going to be collecting fees for doing other things, and it's important that they know that."  Dkt. No. 310-1, ¶ 380.

dollars in fees taken by KND Affiliates, cast doubt on the integrity of the offering process and the impartiality of the underwriter. *See Statement of the Commission Regarding Disclosure Obligations of Municipal Securities Issuers and Others*, Exchange Act Release No. 33741, 7 Fed. Sec. L. Rep. ¶ 72,442, 1994 WL 73628, at *6 (Mar. 9, 1994).

In addition, KND's and Kinsell's violation of the Securities Act, the Exchange Act, and MSRB Rules G-17 and G-32(a)(iii)(A)(2) was not an isolated incident. While beyond the reach of the applicable statute of limitations, the Defendants failed to disclose KND Affiliates' contractual relationships with the Authority and its receipt of bond proceeds, other than the 2% management fee, in any bond offering before 2008,[4] just as they did in the May 2008 offering. KND Affiliates' receipt of over $2.4 million in bond proceeds also dwarfs the $133,349.25 in disclosed underwriting compensation to KND for the May 2008 offering, as that underwriting fee represents less than 6% of the Defendants' total compensation from the Authority. As the Court found, based on undisputed facts, such information, had it been disclosed, would have been material to investors.

Moreover, Kinsell's age and his station in life, or the age of the conduct at issue, are irrelevant considerations. The SEC filed its complaint over five years ago, and timely filed its motion for summary judgment, and "the record does not reflect any overzealousness on the part of the defendant to shorten the time interval." *SEC v. Cohn*, 216 F. Supp. 636, 639 (D.N.J. 1963); *see also SEC v. Radius Capital Corp.*, NO. 2:11-cv-116-FtM-29DNF, 2016 U.S. Dist. LEXIS 51525, at *8 (M.D. Fla. Apr. 20, 2015) (passage of nine years since scheme ended did not obviate need for injunctive relief); *SEC v. Crofters, Inc.*, 351 F. Supp. 236, 262 (S.D. Ohio 1972)

---

[4] During the 2006-2008 time period, the Authority issued five bond offerings in addition to May 2008 offering. Dkt. No. 317, ¶¶ 21, 22, 24. KND was the sole underwriter on each of those offerings. *Id.*, ¶ 28; *see also* Dkt. No. 117 (Kinsell Answer), ¶ 32.

Case No. EDCV 13-0776 JAK-KK(x)

("courts should not look solely to the period of time that has elapsed between a violation and an ultimate ruling…a crowded docket [should] not be allowed to make activities that were improper [in the past] acceptable [in the present]," *rev'd on other grounds sub nom. SEC v. Coffey*, 493 F. 2d 1304 (6th Cir. 1974).

Courts also consider the degree to which defendants have recognized the wrongful nature of their conduct. A person's "lack of remorse" can be apparent in the person's "continued insistence on the validity of his" conduct that has been found to be in violation of the securities laws. *Fehn*, 97 F.3d at 1295; *accord SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1101 (2d Cir. 1972). "Promising to stop doing wrong while denying any wrongdoing is the wrong way to establish that wrongdoing will not reoccur." *SEC v. Ginsburg*, 362 F.3d 1292, 1305 (11th Cir. 2004). Here, Kinsell has given no indication that he appreciates the wrongfulness of his conduct, nor provided any meaningful assurances that he will not commit additional securities laws violations in the future.

Based on the totality of circumstances, the SEC submits that KND and Kinsell should be permanently enjoined from committing future violations of Section 17(a)(2) of the Securities Act and Section 15(B)(c)(1) of the Exchange Act and MSRB Rules G-17 and 32(a)(iii)(A)(2).

## B.     KND and Kinsell should be required to disgorge their ill-gotten gains and pay prejudgment interest thereon

It is well settled that the SEC may seek, and courts may order, disgorgement of ill-gotten gains. *See SEC v. First Pacific Bancorp,* 142 F.3d 1186, 1191 (9th Cir. 1998) courts have "broad equity powers to order the disgorgement of 'ill-gotten gains' obtained through the violation of the securities laws"); *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995); *see also SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113 (9th Cir. 2006). "The paramount purpose of …ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing." *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987). The SEC need only present evidence of a

1  "reasonable approximation" of the defendant's profits causally connected to the

2  violation, and should include all gains flowing from the illegal activities.  *See SEC v.*

3  *Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010); *JT Wallenbrock*,

4  440 F.3d at 1113-14.  Once such evidence has been presented by the SEC, the burden

5  shifts to the defendant to "demonstrate that the disgorgement figure was not a

6  reasonable approximation."  *Platforms Wireless*, 617 F.3d at 1096 (quoting *SEC v.*

7  *First City Financial Corp., Ltd.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)).

8      Disgorgement typically includes prejudgment interest, to ensure that the

9  wrongdoer does not profit from the illegal activity.  *See Manor Nursing Ctrs.*, 458

10 F.2d at 1105; *SEC v. CMKM Diamonds, Inc*., 635 F. Supp. 2d 1185, 1190 (D. Nev.

11 2009); *SEC v. Cross Fin. Servs.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995).

12     Further, "where two or more individuals or entities collaborate or have a close

13 relationship in engaging in the violations of the securities laws, they [may be] held

14 jointly and severally liable for the disgorgement of illegally obtained proceeds."  *JT*

15 *Wallenbrock & Assocs.*, 440 F.3d at 117 (quoting *First Pac. Bancorp*., 142 F.3d at

16 1191); *SEC v. Poirier*, 142 F. Supp. 1033, 1047-48 (D. Ariz. 2001).

17     Finally, a defendant's current financial condition, or any hardship that

18 disgorgement would impose, are not factors to be considered in determining

19 disgorgement.  *See, e.g., SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008); *SEC*

20 *v. Wyly,* 56 F. Supp. 3d 394, 406 (S.D.N.Y. 2014); *SEC v. Coldicutt*, No. CV 13-

21 01865-RGK (VBKx), 2014 U.S. Dist. LEXIS 190495, at *21 (C.D. Cal. Aug. 8,

22 2014); *SEC v. Integrity Fin. AZ, LLC,* No. 1:10-CV 782, U.S. Dist. LEXIS 6758, at

23 *20 (E.D. Ohio Jan. 20, 2012);

24     Here, the SEC has calculated a reasonable approximation of the amount of ill-

25 gotten gains obtained by KND and Kinsell.  Specifically, the SEC seeks

26 disgorgement from KND and Kinsell, on a joint and several basis, of the $133,349.25

27

28

in underwriting fees KND received in connection with May 2008 bond offering,[5] together with prejudgment interest thereon in the amount of $60,035.35, for a total of $193,384.60.  *See* Declaration of Donald W. Searles In Support of SEC's Request for Injunctive and Monetary Relief ("Searles Decl."), ¶¶ 4-5.

In securities cases involving the failure by a defendant to disclose a potential conflict of interest, a breach of a fiduciary duty, or a failure to abide by a regulatory requirement, courts typically require defendants to disgorge the transactional fees they have received.  *See, e.g., SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) (affirming district court order requiring disgorgement of subscription fees paid to unregistered investment adviser); *SEC v. Bernath*, No. 3:15CV485, 2017 U.S. Dist. LEXIS 17916, at *6 (W.D.N.C. Feb. 8, 2017) (ordering disgorgement of advisory fees); *SEC v. Kilpatrick*, No. 12-12109, 2014 U.S. Dist. LEXIS 104307 (E.D. Mich. July 31, 2014) (requiring disgorgement of undisclosed compensation in "pay to play" scheme); *SEC v. Rooney*, No. 11 C 8264, 2014 U.S. Dist. LEXIS 95101 (N.D. Ill. July 14, 2014) (ordering disgorgement of advisory fees, on joint and several basis between investment advisory firm and its managing partner, where manager failed to disclose to investors he had a conflict of interest in deviating from fund's investment strategy); *United States v. York*, 890 F. Supp. 1117, 1132 (D.D.C. 1995) (ordering disgorgement of subservicing fees based on undisclosed conflict of interest and breach of fiduciary duties); *In the Matter of Public Fin. Consultants, Inc.*, SEC Initial Decisions, Release No. 274, 2005 SEC LEXIS 433, at *175 (Feb. 25, 2005) (ordering disgorgement of profits on resale of bonds derived from underwriter's 1% discount for violations of  MSRB Rule G-17 and Section 15B(c)(1) of the Exchange Act); *In the Matter of Wheat, First Sec., Inc.*, SEC Initial Decisions Rel. No. 155, 1999 SEC LEXIS 2863, at *102-103 (Dec. 17, 1999) (ordering disgorgement of advisory fees

---

[5] It is undisputed that KND served as the underwriters and received an underwriting fee of $133,349.25 in connection with the Authority's May 2008 bond offering. Dkt. No. 310-1, ¶ 377.  *See also*, Ackerman Decl., ¶ 15, Exs. 2, 3, & 4.

for violations of MSRB Rule G-17 and Section 15B(c)(1) of the Exchange Act);  *In the Matter of Thorn, Alvis, Welch, Inc.*, SEC Initial Decision Release No. 88, 1996 SEC LEXIS 1237, at *52 (May 2, 1996) (ordering disgorgement of net underwriting fees for underwriter's violation of  Section 17(a) of the Securities Act, Sections 10(b) and 15B(c)(1) of the Exchange Act, and MSRB Rule G-17).

Indeed, the larger public interest of fostering compliance with the securities laws, and MSRB Rules G-17 and 32(a)(iii)(2) in particular, compels the disgorgement of KND's underwriting fees, regardless of whether that nondisclosure can be shown to have resulted in investor losses.  As the Supreme Court held in *Woods v. City Nat'l. Bank & Trust Co. of Chicago*, "where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interest, he should be denied compensation.  It is no answer to say that fraud or unfairness were not shown to have resulted." 312 U.S. 262, 268 (1941).  As the Supreme Court continued:

> A fiduciary … may not perfect his claim to compensation by insisting that although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one.  Only strict adherence to these equitable principles can keep the stand of conduct of fiduciaries "at a higher level than that trodden by the crowd.

*Id*. at 269.

These overarching equitable principles apply with particular force to underwriters, such as KND, who occupy a unique and significant role in securities offerings.  Indeed, the Securities Act places upon underwriters "the primary responsibility for verifying the accuracy and completeness of information provided to potential investors."  *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 369-70 (2d Cir. 1973); *see also Dolphin & Bradbury, Inc. v. SEC*, 512 F.3d 634, 641 (D.C. Cir. 2008) ("[a]n underwriter 'occupies a vital position' in a securities offering

because investors rely on its reputation, integrity, independence, and expertise.") (quoting *Municipal Securities Disclosure*, Exchange Act Rel. No. 26, 100, 41 SEC Docket 1131 (Sept. 22, 1988), 1988 WL 99989, at *6 , *20-21); *In re Worldcom, Inc. Sec. Litig*., 346 F. Supp. 2d 628, 662 (S.D.N.Y. 2004) ("Congress recognized that underwriters occupied a unique position that enabled them to discover and compel disclosure of essential facts about the offering.  Congress believed that subjecting underwriters to the liability provisions would provide the necessary incentive to ensure their careful investigation of the offering.") (*quoting The Regulation of Securities Offerings*, Securities Act Release No. 7606A, 63 Fed. Reg. 67171, 67230 (Dec. 4, 1998)).  Most importantly, investors are entitled to rely on the underwriter's independence from the issuer and its objectivity in discharging its due diligence obligations:

> An underwriter's relationship with the issuer gives the underwriter access to facts that are not equally available to members of the public who must rely on published information. And the relationship between the underwriter and its customers implicitly involves a favorable recommendation of the issued security. Because the public relies on the integrity, independence and expertise of the underwriter, the underwriter's participation significantly enhances the marketability of the security. And since the underwriter is unquestionably aware of the nature of the public's reliance on his participation in the sale of the issue, the mere fact that he has underwritten it is an implied representation that he has met the standards of his profession in his investigation of the issuer.

*Sanders v. John Nuveen & Co*., 524 F.2d 1064, 1069-70 (7th Cir. 1975), *vacated and remanded*, 425 U.S. 929 (1976); *see also*, *Chris-Craft*, 480 F. 2d at 370 (overall, "no greater reliance in our self-regulatory system is placed on any single participant in the issuance of securities than upon the underwriter.")

1  MSRB Rules G-17 and G-32(a)(iii)(A)(2) are designed to reinforce the

2  investing public's reliance on the underwriter's independence of the issuer by

3  requiring the underwriter to disclose "the amount of any fee received by the broker,

4  dealer or municipal securities dealer as agent for the issuer in the distribution of the

5  securities."[6] Here, as the Court has already found, KND and Kinsell violated those

6  rules, and that their failure to disclose to investors their unorthodox relationship with

7  the Authority, and their receipt of bond proceeds far in excess of their underwriting

8  fees, was material to investors.  Indeed, the receipt of such fees, had they been

9  disclosed, would have undermined the perception of KND's independence and

10  objectivity in the eyes of investors, and could well have negatively impacted the bond

11  offering.  *See* Dkt. No. 310-1, ¶¶ 380-382.  As a consequence of their violation of

12  their disclosure obligations, KND and Kinsell should be ordered, on a joint and

13  several basis, to disgorge KND's underwriting fees in connection with the May 2008

14  bond offering.

15  ## C.  Kinsell should be required to pay a civil penalty

16  Kinsell should also be assessed penalties under Section 20(d)(1 of the

17  Securities Act and Section 21(d)(3) of the Exchange Act.  15 U.S.C. §§ 77t(d)(1),

18  78u(d)(3).[7]  Civil penalties are meant to punish wrongdoers and to deter them and

19

20  [6] MSRB Rule G-17 requires municipal securities professionals to "deal fairly with all persons and [ ] not engage in any deceptive, dishonest, or unfair practice."  The

21  MSRB has consistently stated that a failure to disclose material information violates Rule G-17.  *See, e.g.*, *In the Matter of Wheat, First Sec.*, 1999 SEC LEXIS 2683, at

22  *49.  In adopting the MSRB Rules, the Commission stated that Rule G-17 was an "omnibus fair practice rule" meant to "establish the general standard of conduct of a

23  municipal securities professional," while the other proposed rules would provide, in essence, an elaboration upon this general standard, by establish guidelines for

24  particular subject matters."  *In the Matter of Municipal Securities Rulemaking Board*, Order Approving Proposed Rule Change, Exchange Act Rel. No. 15247 (Oct. 19.

25  1978).  Hence, having violated MSRB Rule G-32(a)(iii)(2) by failing to accurately disclose the amount of their fees, KND and Kinsell necessarily violated MSRB Rule

26  G-17.

27

28  [7] The SEC is not requesting a civil penalty against KND.  Although it is still a California registered corporation, it is no longer actively engaged in business.  Searles

Case No. EDCV 13-0776 JAK-KK(x)

others from future securities law violations.  *See SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998).  The amount of any civil penalty "shall be determined by the court in light of the facts and circumstances."  15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B).  Because civil penalties, like permanent injunctions, are imposed to deter the wrongdoer from similar conduct in the future, in assessing civil penalties, courts frequently apply the factors set forth in *Murphy*, 626 F.2d 633, used to establish the need for injunctive relief.

The Securities and Exchange Acts provide that penalties shall be assessed according to a three-tier system.  15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(A).  First-tier penalties are the least severe and may be imposed for any violation of the relevant securities law. 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B).  Second-tier penalties apply to violations that involve "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement." *Id.*  Third-tier penalties are the most severe and may be imposed for a violation that involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and if the violation creates substantial losses or significant risk of substantial losses to other persons." *Id.* Under all three tiers, a penalty cannot exceed the greater of either a specific statutory amount, or "the gross amount of pecuniary gain to such defendant as the result of the violation." *Id*. §§ 77t(d)(2)(A)(B) &(C), 78u(d)(3)(A)(B) & (C).  Courts often award the amount of the disgorgement as the defendant's pecuniary gain.  *See, e.g.*, *SEC v. Pentagon Capital Mgmt. PLC*, No. 08 Civ. 3324 (RWS), 2012 U.S. Dist. LEXIS 43046, at *22 (S.D.N.Y. Mar. 28, 2012) ("the case law demonstrates that far from uncommon, courts routinely impose civil penalties equal to disgorgement.") (collecting cases); *CMKM Diamonds, Inc*., 635 F. Supp. 2d at 1193 ("courts often order penalties based on a defendant's gross pecuniary gain.") (collecting cases).

The SEC proposes a second tier civil monetary penalty against Kinsell of

---

Decl., ¶ 6.

$133,349.25.  Given Kinsell's clear violation of KND's disclosure requirements, the critical role underwriters' perceived independence and objectivity play in securities offerings, his repeated failure to fully disclose his conflicts of interest through his receipt of bond proceeds in excess of the 2% construction management fee in multiple bond offerings, and his apparent lack of remorse and failure to provide any assurance against future violations, a civil penalty equal to disgorgement – that is, KND's underwriting fee of $133,49.25 – is appropriate.

## IV. __CONCLUSION__

For the foregoing reasons, the SEC respectfully requests that the Court issue a Final Judgment, permanently enjoining KND and Kinsell from future violations of Section 17(a)(2) of the Securities Act and Section 15(B)(c)(1) of the Exchange Act and MSRB Rules G-17 and 32(a)(iii)(A)(2), ordering disgorgement, on a joint and several basis, of $133,349.25, together with prejudgment interest in the amount of $60,035.35, for a total of $193,384.60, and a civil penalty against Kinsell equal to the amount of disgorgement, that is $133,349.25.

Dated:  September 14, 2018

*/s/ Donald W. Searles*
DONALD W. SEARLES
Attorney for Plaintiff
Securities and Exchange Commission

14

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
400 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On September 14, 2018, I caused to be served the document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR INJUNCTIVE AND MONETARY RELIEF AGAINST DEFENDANTS KINSELL, NEWCOMB & DEDIOS, INC. AND JEFFREY KINSELL** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  September 14, 2018

*/s/ Donald W. Searles*
Donald W. Searles

1

***SEC v. City of Victorville, et al.***
**United States District Court—Central District of California**
**Case No. 5:13-cv-00776-JAK-KK**

## <u>SERVICE LIST</u>

Terree A. Bowers, Esq.
*terree.bowers@arentfox.com*
Alexander Stephenson Birkhold, Esq.
*alexander.birkhold@arentfox.com*
Jerrold E. Abeles, Esq.
*jerry.abeles@arentfox.com*
Karen Peters-Van Essen, Esq.
*vanessen.karen@arentfox.com*
Arent Fox LLP, Attorneys at Law
Gas Company Tower
555 W. Fifth Street, 48th Floor
Los Angeles, CA 90013

Peter V. B. Unger, Esq.
*peter.unger@arentfox.com*
Arent Fox LLP, Attorneys at Law
1717 "K" Street, N.W.
Washington, DC 20006
*Attorneys for Defendants City of
Victorville and Southern California
Logistics Airport Authority*

Shaun M. Murphy, Esq.
murphy@sbemp.com
Slovak Baron Empey Murphy &
Pinkney, LLP
1800 E. Tahquitz Canyon Way
Palm Springs, CA 92262

Attorneys for Defendants Janees
Williams, Jeffrey Kinsell, Kinsell
Newcomb & DeDios (KND), KND
Affiliates and KND Holdings

Michael D. Torpey, Esq.
*mtorpey@orrick.com*
James N. Kramer, Esq.
*jkramer@orrick.com*
Lacey Bangle, Esq.
*lbangle@orrick.com*
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105

Kevin M. Askew, Esq.
*kaskew@orrick.com*
Natalie Nahabet, Esq.
*nnahabet@orrick.com*
Stephanie Albrecht, Esq.
*salbrecht@orrick.com*
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90071

George E. Greer, Esq.
*ggreer@orrick.com*
Charles J. Ha, Esq.
*charlesha@orrick.com*
Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA 98104-7087
*Attorneys for Defendant Keith C.
Metzler*

2